[Civ. No. 9376.   Third Dist.   Nov. 8, 1957.]

ROBERT WALKER, Petitioner, v. SUPERIOR COURT OF MENDOCINO COUNTY, Respondent.

Broaddus & Golden and John J. Golden for Petitioner.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—This is a petition for a writ of mandate to compel the respondent court to order the pretrial inspection of certain reports in the possession of the district attor-

ney and coroner and to furnish the petitioner's counsel with copies of certain documents in the possession of the sheriff and the district attorney.

Petitioner Robert Walker has been indicted for the murder of one Marion Harrist and for the attempted rape of one Nellie V. Acard. On September 13, 1957, petitioner sought an order from the respondent court directing the district attorney and the sheriff to deliver to petitioner's counsel the following documents:

1. A copy of any written statements signed by the petitioner and a copy of any transcripts of any recorded statement given by the petitioner.

2. A copy of any written statement signed by Raul Diaz and a copy of any transcript of any recorded statement given by Raul Diaz.

3. A copy of any report of Carl Aagaard, M.D., concerning the autopsy performed by him on the body of Marion Harrist.

4. A copy of any report received by the district attorney or the sheriff from the Bureau of Criminal Identification and Investigation concerning materials observed on or removed from the petitioner's shoes.

In the alternative to the above requests, petitioner sought an order permitting petitioner's counsel to inspect and copy each of the statements, transcripts, and reports.

The motion was made on the ground that the petitioner was entitled to receive, inspect, and copy the statements, transcripts and reports in preparation for trial and that to deny petitioner such rights would be to deprive him of procedural due process of law.

A hearing was had on the motion, at which time affidavits were introduced by petitioner and his counsel. No counter-affidavits were filed by the prosecution. Factually, therefore, the matters averred were admitted. Petitioner alleged in his affidavit that he made certain statements to members of the sheriff's office; that he was unable to recall what he said; that it may be necessary for him to refresh his memory of the events to which they relate; and that the statements made are material to the issue of petitioner's guilt or innocence.

The affidavit of petitioner's attorney alleged that he went to the home of Raul Diaz, who was an eyewitness to the events and occurrences leading to the charges against petitioner, to interview Diaz concerning the facts giving rise to those charges; that Diaz told the attorney that he would be willing

to discuss the events and occurrences observed by him relating to the death of Marion Harrist and the alleged attempted rape of Nellie V. Acard, except that he had been told by the sheriff not to discuss anything about those matters with anyone; that the sheriff had given Diaz a writing for him to show to anyone attempting to talk to him about the case reading as follows:

"I, Raul Diaz, have been Instructed by Sheriff Reno H. Bartolomie of Mendocino County, not to converse, discuss, or mention anything pertaining to the case of The People of the State of California, -vs- Robert Walker, who is now being held in the Mendocino County Jail and charged with 187 P.C., to-wit: murder, 161 P.C., to-wit: attempt rape. This notice also includes the defense attorneys or attorney for Robert Walker."

Continuing, the affidavit stated that Diaz said he was afraid that he would get in trouble if he violated the sheriff's order; that the sheriff has in his possession or under his control written statements signed by Diaz; that the sheriff has refused to provide the attorney with a copy of Diaz's statement; that Diaz is the only witness to the events and occurrences at the time Marion Harrist met his death except for defendant and Nellie V. Acard, and that his statements are necessary for defendant and his attorney to determine what Diaz observed.

The affidavit further stated that the attorney had asked Dr. Aagaard, the physician who performed the autopsy on the body of the decedent, for a copy of the autopsy report; that Dr. Aagaard refused to furnish a copy of the report or to discuss the matter because he also had been instructed by the sheriff not to do so; that the attorney had asked the sheriff, who is also the county coroner, for a copy of the report, but the request was refused.

The affidavit of petitioner's attorney also states that the prosecution contends the decedent met his death as a result of being kicked in the head by petitioner; that at the time of petitioner's arrest he was wearing the same pair of shoes he was wearing at the time decedent met his death; that several days after he was incarcerated in the county jail the sheriff took the shoes; that the sheriff transmitted them to the State Bureau of Criminal Identification and Investigation, where the shoes were submitted to a laboratory analysis in which any materials deposited on the shoes which might have some evidentiary value in the case were removed; that

it is now impossible to obtain any more material from the shoes having any evidentiary value on the issue of whether or not petitioner kicked the decedent on the head; that the sheriff has a written report containing statements identifying and describing the material removed from the shoes; that the sheriff has refused to furnish petitioner's attorney with a copy thereof and that without the report it is impossible for the defendant to receive a fair trial.

At the hearing on the matter, petitioner's attorney testified that he went to the coroner's office and asked the deputy if the files contained a copy of Dr. Aagaard's autopsy report; that he was informed that a copy was in the files; that a copy was refused him and that his request for inspection was also refused.

After the hearing the court entered its order granting the petitioner the pretrial inspection of any written statements signed by petitioner and a copy of any recorded statements given by petitioner relating to the charges as set forth in the indictment. Otherwise the court denied the motion.

Petitioner then asked this court to compel the trial court to order pretrial inspection of the documents in the possession of the prosecution and the coroner, which the trial court had refused. Petitioner claims that if he is required to proceed to trial without the materials sought in his motion addressed to the trial court he will be deprived of procedural due process of law. In his brief filed in support of the petition, petitioner claims that he is entitled to the autopsy report as a matter of right, and that the trial court abused its discretion in refusing to grant inspection of Diaz's statements and the report on the shoes made by the state bureau.

We shall discuss each of these contentions separately.

### THE AUTOPSY REPORT

█ Petitioner contends that the autopsy report is a public document and he therefore is entitled to a copy of it as a matter of right. By section 27491 of the Government Code the coroner has the duty to investigate the cause of death of any person reported to him as having been killed by violence or who has suddenly died under circumstances that afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means. The section provides that the information secured by the coroner is to be reduced to writing and *forthwith* filed by him in his records of the death of the individual. (Emphasis ours.) Government Code, section 1227, provides that the public rec-

ords and other matters in the office of any officer, except as otherwise provided by law, are at all times during office hours open to the inspection of any citizens of the state. Section 1888 of the Code of Civil Procedure provides that all written acts or records of public officers are public records. Section 1892 of the Code of Civil Procedure provides that every citizen has the right to inspect and take a copy of any public writing except as otherwise provided by statute. An autopsy report is a record that the coroner is required to keep and is therefore a public record which a citizen may inspect. None of the statutory exceptions is present here. In the instant case an indictment has been filed. Petitioner is therein charged with murder and attempted rape. There is no reason why the report should be withheld from the public.

### The Statements of the Witness Raul Diaz

■ Defense counsel in a criminal prosecution have no absolute right to inspect or compel the production of evidence in the possession of the prosecution. The defendant has no inherent right to invoke discovery as a means of examining the state's evidence merely in the hope that something may turn up which would aid his defense. But in the interest of justice the trial court may grant pretrial discovery for good cause shown. ■ When an application for such discovery is made the trial court has a broad judicial discretion to grant or refuse and it is only when such discretion has been abused that error can be predicated thereon so that mandate will lie. (*Cramer* v. *State*, 145 Neb. 88 [15 N.W.2d 323, 327]; *State* v. *Payne*, 25 Wn.2d 407 [171 P.2d 227, 175 P.2d 494].)

■ Petitioner's allegation that neither he nor his attorney has been able to determine the things, events, or occurrences observed by Raul Diaz at the time Marion Harrist was assaulted is not alone a sufficient reason for this court to hold that the trial court abused its discretion in not permitting pretrial inspection of any statements of Diaz's in the sheriff's possession. Petitioner has the right to interview Diaz and through an interview he could learn what Diaz observed. Presumably he has received a copy of the indictment with the names of the witnesses who testified before the grand jury, as did Diaz. Presumably, also, he has received a transcript of the testimony given by Diaz. Nevertheless he has the right to interview Diaz.

■ " . . . Witnesses are not parties and should not be partisans; they do not belong to either side of the controversy; they may be summoned by one or the other or both, but they

are not retained by either. It would be a most unfortunate condition of affairs if a party to a suit, civil or criminal, should be permitted to monopolize the sources of evidence applicable to the case to use or not as might be deemed most advantageous. Such a proceeding in a criminal case would violate the provisions of the Constitution of this State . . . which provides that 'In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining them [witnesses] in his favor. . . .' The defendant, therefore, has the constitutional right to have compulsory process for obtaining witnesses to testify in his behalf, he has also the right either personally or by attorney to ascertain what their testimony will be." (*State* v. *Papa,* 32 R.I. 453, 459 [80 A. 12].)

While the right may in certain instances be subject to proper exercise of judicial supervision (*Baker* v. *State* (Fla.), 47 So.2d 728), we do not think that the prosecution or the sheriff may order a witness not to talk to the defendant or his counsel. Diaz has refused to talk only because the sheriff ordered him not to and we are of the opinion that it would be proper for the court to entertain a motion to compel the sheriff to annul his order to Diaz. Of course, Diaz did not have to obey the order of the sheriff but as a practical matter such an order can be, and was here shown to be, an effective way of keeping a witness's mouth closed. Since the order came from a person connected with the state, we are of the opinion that a court can and should order that person to cease interfering with defense counsel's right to interview a witness. Petitioner has shown no sufficient reason why he should have pretrial inspection of the statements Diaz made to the sheriff. It may be, as was held in *People* v. *Riser,* 47 Cal.2d 566 [305 P.2d 1], that at the trial conditions may arise giving petitioner a right to compel production and inspection of such statements. But we are here concerned only with pretrial discovery. What we have said "does not involve the question of the right of an accused to obtain an order from the court to compel a witness to talk or submit to an interview who objects to same. That the court has no authority to enter such an order is well settled." (*Leahy* v. *State,* 111 Tex.Crim. 570 [13 S.W.2d 874].)

### THE REPORT OF THE BUREAU OF CRIMINAL IDENTIFICATION AND INVESTIGATION

▮ Petitioner alleges that the prosecution will contend that Marion Harrist met his death as a result of being kicked

in the head by the petitioner and, accordingly, one of the material issues at the trial will be whether petitioner did so. As noted, these allegations have not been denied. When petitioner was arrested he was wearing the same shoes he was wearing when the altercation with the deceased occurred. The shoes were taken from the petitioner by the sheriff and transmitted to the State Bureau of Criminal Identification and Investigation, where they were submitted to a laboratory analysis in which any material which may have been deposited on the shoes was removed. Petitioner alleges that it would now be impossible for the defense to ascertain the condition of the shoes prior to the analysis except from the report. Petitioner alleges that if it were shown that the shoes did not contain any hair or flesh it would tend to prove that petitioner did not kick the decedent. The report is not evidence and would not ordinarily be admissible at the trial. However, the report is now the only source of information from which the defense can discover what evidence the shoes afforded. Unless the defense is allowed to see the report it may be most difficult for the petitioner to properly prepare for trial. We think that in the interest of justice the trial court should have ordered a copy of the report given to the petitioner.

" '. . . That it was desired that the state's evidence remain undisclosed, partakes of the nature of a game, rather than judicial procedure. The state in its might and power ought to be and is too jealous of according a defendant a fair and impartial trial to hinder him in intelligently preparing his defense and availing himself of all competent material and relevant evidence that tends to throw light on the subject-matter on trial.' " (*Powell* v. *Superior Court*, 48 Cal.2d 704, 709 [312 P.2d 698].)

We conclude that a peremptory writ of mandate should issue, requiring the respondent court to set aside its order denying the petitioner the right to inspect and take a copy of the autopsy report and to inspect and take a copy of the report of the State Bureau of Criminal Identification and Investigation.

Let the writ issue.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied December 5, 1957, and respondent's petition for a hearing by the Supreme Court was denied December 30, 1957.