**STATE ex rel. Ewing C. SADLER, County Attorney, Pittsburg County, Oklahoma, Petitioner,**

v.

**W. A. LACKEY, District Judge, 18th Judicial District, Oklahoma, Respondent.**

No. A–12558.

Criminal Court of Appeals of Oklahoma.

Dec. 18, 1957.

**612**

Ewing C. Sadler, County Atty., Pittsburg County, McAlester, for petitioner.

Robert J. Bell, McAlester, for respondent.

BRETT, Presiding Judge.

This is an original petition for writ of prohibition brought by Ewing C. Sadler, County Attorney of Pittsburg County, Oklahoma, against the Honorable W. A. Lackey, Judge of the Eighteenth Judicial District of the State of Oklahoma. From the petition filed herein, it appears one Bill Tippit, Jr., was bound over to the District Court from the Justice of the Peace Court in a preliminary hearing on a charge of manslaughter. It appears that in the preliminary before the Justice of the Peace, disclosure was made by the County Attorney that certain specimens were scraped from the automobile of the defendant and transmitted to the Federal Bureau of Identification Laboratory in Washington, D. C., for examination, analysis, and report. At that time it was disclosed by the County Attorney the F. B. I. agent who made the analysis would be present to testify in the District Court

at the trial on the merits concerning the analysis and report delivered to the County Attorney. It finally became known to the defendant that the F. B. I. report had been received by the County Attorney and was in his possession.

Thereafter, a motion for inspection of the F. B. I. report was instituted in the District Court on October 31, 1957. On the motion and evidence in support thereof, Judge W. A. Lackey granted the motion and entered an order requiring the County Attorney to produce the F. B. I. report for the defendant's inspection and for the further purpose of making copy thereof. At the time of hearing on the motion before Judge Lackey, the County Attorney did not disclose or give any indication as to the conclusions contained in the report. The defendant was not apprised that the F. B. I. examiner found by his analysis of the scrapings that his automobile was definitely established as the instrument of death and he does not now know such to be a fact. The petition alleges that the trial court in ordering the inspection exceeded its jurisdiction and exercised judicial power not granted by law. On the foregoing state of facts, the alternative writ was issued to said Judge to refrain from requiring execution of said order until hearing was had on the petition herein on November 20, 1957, and to await the further order of this Court.

Return to said writ was made by respondent, stating that the trial court's reason for granting the motion was that the defendant was an inexperienced school boy and that upon all the facts and the law the granting of the motion was in the interest of justice and fairness, and in the court's discretion the said report should be made available to the defendant.

The question thus presented is, was the defendant entitled to the pre-trial order requiring the County Attorney to produce the F. B. I. report on the examination of the scrapings from the defendant's automobile and make it available to him for pre-trial examination?

The common law courts, until aided by statute, for want of power refused to grant pre-trial inspection even in civil cases, except where the document requested for inspection was the very essence of the cause itself as evidence therein. Later, courts of equity instituted rules for inspection and recovery. Finally, as applied to civil courts, statutes were enacted for procedure by motion or petition in the specific case. Under Civil Procedure, 12 O.S.1951 §§ 481–502, provision was made for inspection and making copies, etc., of certain records in the possession of the adverse party or parties where the document is material and competent. Hence, as applied to civil cases, the practice is now well recognized, not only in Oklahoma, but in other states as well. In some states, by statute, civil rules of inspection are available in criminal cases. We know of no such statute in Oklahoma.

Nevertheless, it is urged that the power is inherent in the trial court in criminal cases to grant pre-trial inspections and that the relief herein sought should be exercised to prevent a miscarriage of justice or possibly a failure of justice. Argument supporting this theory may be found in Wigmore on Evidence, 3rd Edition, §§ 1859g–1863; Walker v. Superior Court, Cal.App., 317 P.2d 130; Powell v. Superior Court, 48 Cal.2d 704, 312 P.2d 698; Dowell v. Superior Court, 47 Cal.2d 483, 304 P.2d 1009; Shores v. U. S., 8 Cir., 174 F.2d 838; State v. Cicena, 6 N.J. 296, 78 A.2d 568; U. S. v. Rich, 6 Alaska 670.

The defendant, in the absence of statutory authority, has no absolute right of pre-trial inspection or to compel the state to produce documents and reports that may be beneficial to the defendant. Nor, does the defendant have an inherent right to examination of the state's evidence merely in the hope that something may turn up which would aid his defense or supply clues for gathering evidence. People ex rel. Lemon v. Supreme Court, 245 N.Y. 24, 156 N.E. 84, 86, 52 A.L.R. 200. But, in the interest of justice for good cause shown, where the denial of pre-trial inspection might result in a miscarriage of justice, the trial court has the inherent right in the exercise of sound judicial discretion to grant the remedy of pre-trial inspection to the accused. Walker v. Superior Court, supra. But, the right of pre-trial inspection should not be granted for the purpose of blunder-buss roving so that the privilege would reach the stature of an absolute right. Shores v. U. S., supra. In fact, ordinarily the rules so clearly announced in Lemon v. Supreme Court, supra, the leading case on this question, wherein pre-trial inspection was denied, should be adhered to and seldom relaxed. But, even Justice Cardozo in the Lemon case said:

"* * * in respect of criminal prosecutions, (the right of inspection of documents, reports, etc.,) is something that can best be determined at the call of particular exigencies in the setting of the concrete instance. The courts are properly reluctant to abjure the power in advance, * * *."

There are situations where even the law must have its heart line of exceptions, if it is to sustain the life of justice. In the case at bar, we have such a situation. The undisputed facts as revealed by counsel for the petitioner and respondent are to the effect that defendant, a minor seventeen years of age, was unaware that he had hit anything with his automobile, much less a child two and one-half years of age. The description of the automobile that struck the child given by witnesses near the scene was such as not to connect the defendant therewith. After the defendant had passed the scene of the tragedy and being unaware of it, he observed a gathering crowd. He returned to the scene to ascertain the cause of the gathering. The officers, being without identification of the driver of the supposed hit and run automobile, were informed by the defendant that he passed the fatal point about the time of the tragedy. The officers bandied this information as interference on the part of the defendant since the automobile

**614**

described by witnesses did not compare with the defendant's automobile. After some confusion, the officers decided that Tippet might be the driver of the death car. Thereafter, they took scrapings off the car which were sent to the F. B. I.

The defendant contends he did not know following this incident and does not now know if his car was positively the instrument of fatality. He only knows what the information alleges and what he surmises the County Attorney believes to be the truth. It is apparent that only because of his returning to the scene of the fatality and because of his insistence that his car might have been the instrument of the fatality the County Attorney was able to connect him with the alleged crime. Hence, we have a most unusual case. It appears the defendant acted in absolute good faith. His own good conscience, for which he is to be commended, was the means of his discovery. His open minded frankness with the state and his truthfulness alone established him as a suspect. It is apparent, although not necessarily absolute, that the testimony of the F. B. I. agent, which will undoubtedly follow the substance of his report, constitutes the very essence of the identification of Tippet with the tragedy. It is true that ordinarily, unless the documents are evidence themselves, as in cases of forgery, threatening letters, etc., which are the very essence of the case, they should not be required for inspection in pre-trial proceedings. Lemon v. Supreme Court, supra; State v. Thompson, Del.Super., 134 A.2d 266; United States v. Benson, D.C., 20 F.R.D. 602. In the rarest instances, reports of investigation should be required to be produced at the trial for purpose of cross-examination, and then only to meet the demands of justice.

It is urged to require inspection herein, will open up the County Attorney's files for inspection and result in abuse in other cases. The answer to that contention is where abuse of the privilege herein granted is sought, the state's relief is by writ of prohibition in this Court which in proper cases may readily be obtained.

Under the law and the circumstances of this case, we can see no reason why the state itself should not have made the F. B. I. report available. Certainly, if it contains factual truth, as we presume it does, the elements thereof are irrefutable. On the other hand, if it shows the defendant was not connected with the tragedy, he is entitled to the benefit of it. Under the very peculiar circumstances of this case, we do not believe the state, in its might and power, should be permitted the advantage of the defendant's initial truthfulness and then withhold the most essential element of truth from him. Particularly where the means of ascertaining the truth is not now available to him. As was said in Walker v. Superior Court, supra [317 P.2d 134]:

"When petitioner was arrested he was wearing the same shoes he was wearing when the altercation with the deceased occurred. The shoes were taken from the petitioner by the sheriff and transmitted to the State Bureau of Criminal Identification and Investigation, where they were submitted to a laboratory analysis in which any material which may have been deposited on the shoes was removed. Petitioner alleges that it would now be impossible for the defense to ascertain the condition of the shoes prior to the analysis except from the report. Petitioner alleges that if it were shown that the shoes did not contain any hair or flesh it would tend to prove that petitioner did not kick the decedent. *The report is not evidence and would not ordinarily be admissible at the trial.* However, the report is now the only source of information from which the defense can discover what evidence the shoes afforded. Unless the defense is allowed to see the report it may be most difficult for the petitioner to properly prepare for trial. We think that in the interest of justice

the trial court should have ordered a copy of the report given to the petitioner." (Emphasis ours.)

The report herein is now the only source of information. It was made possible only because of the defendant's honor and high sense of integrity. Under the circumstances herewith presented, truth is reciprocal. Like mercy, it can bless both him who gives and him who takes. There is no reason herein for the truth to be either hid under a procedural bushel or be administered by halves, lest it become an instrument of perversion. Neither should the exposure of the truth be delayed until it can be unsheathed at the time of trial as a cutlass of surprise, lest it foster prejudice. Nor, should we in this case permit its hypocritical use as an instrument of legal surgery to expose malignant falsehood, for there appears no occasion in this case for such use of it. Rather, truth should not be an instrument of gladitorial combat in the arena of the law, but benign scales of justice in which to weigh the rights of both the state and the accused in an honest endeavor to arrive at the facts. Certainly the truth requires no victims and the state should demand none. To deny the report in this instance would reduce justice to a game of chance, played with loaded dice. Especially in this case, the state should make a benign, open-handed approach to the truth with the scales evenly balanced in an effort to mete out justice according to the law and the evidence. It should be as fair with the defendant in presenting this case to the jury as the defendant was in exposing himself to the law. We are of the opinion to require this defendant to wait until the day of trial and approach the bar of justice in doubt as to his positive connection with the tragedy, about which in all fairness he is entitled to be informed, would be most unfair. If the defendant knew what the report contained, he might completely alter his defense plans. If he knew that he had been definitely connected with the tragedy by the report, he might elect to waive a jury and try the case to the court on a plea either not guilty by reason of unavoidable accident or guilty and throw himself on the mercy of the court. But, until the defendant has been advised that he has been definitely connected with the fatality, his position as to his defense is one of speculation and surmise.

■ This appears to us to be a hardship case, where without the information contained in the report, the defendant cannot make an intelligent election as to procedure. Each such case must be determined upon its own facts. In this case, we believe no useful purpose can be served by denying inspection of the report in question. Yet, there are conceiveably many cases where to grant inspection of state documents would greatly hamper the prosecution. In such cases, inspection should be denied. This is one of those cases which undoubtedly Justice Cardozo had in mind which "can best be determined at the call of particular exigencies in the setting of the concrete instance." [245 N.Y. 24, 156 N.E. 86.] It is a case involving more than mnemonic matter, such as the report in the Lemon case, supra. This report is now the only source of information on the subject from which the defense can discover what evidence the automobile afforded. Walker v. Superior Court, supra.

The requirements of equal and exact justice demand no less than fair play. The state should seek no more. Only because of the peculiar circumstances of this case are we impelled to deny the writ of prohibition herein prayed for. It is so ordered.

POWELL and NIX, JJ., concur.

POWELL, Judge (concurring).

I concur in this case only by reason of the exceptional facts stated in the opinion, making this case an exception to the rule stated in Lemon v. Supreme Court, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200, to the effect that documents in possession of

the prosecution which are in themselves inadmissible in evidence, are not subject to inspection by the defendant. See also 11 A.L.R.2d 636, and 17 Am.Jur., § 32, page 36.

In this case as a practical matter it is difficult to understand why the State would hesitate, in view of the peculiar circumstances, in furnishing the defendant with a copy of the F. B. I. statement of the results of the chemical analysis of the organic matter taken from the fender of the defendant's automobile. After all, truth is all that the State seeks. The facts agreed upon before this court would indicate that the defendant at the time of the accident was unaware and still is unaware whether his car actually struck the child and brought about the fatality.

The vital matter here for solution, if defendant's automobile was in fact the death car, would be the determination of whether or not the death came about by an unavoidable accident. Nothing was suggested at oral argument that would indicate otherwise, though by no means was it necessary to divulge all the evidence that would be produced at trial. Nevertheless, the undisputed facts brought out at the hearing before this court and recited in the opinion of the court, compel me to agree to an exception to the general rule.

The recent case of Walker v. Supreme Court, Cal.App.1957, 317 P.2d 130, is a case in point with the within case, and where the peculiar facts forced an exception to the general rule.