**UNITED STATES of America,**
**Appellant,**

**v.**

**Kathryn Thorne KELLY and Ora L.**
**Shannon, Appellees.**

**No. 6020.**

United States Court of Appeals
Tenth Circuit.

July 27, 1959.

Theodore George Gilinsky, Atty., Dept. of Justice, Washington, D. C. (Malcolm Anderson, Asst. Atty. Gen., and Paul W. Cress, U. S. Atty., Oklahoma City, Okl., were with him on the brief), for appellant.

James J. Laughlin, Washington, D. C., for appellees.

Before BRATTON, Chief Judge, PICKETT, Circuit Judge, and KNOUS, District Judge.

BRATTON, Chief Judge.

Ora L. Shannon and Kathryn Thorne Kelly are mother and daughter. In 1933, each was convicted in the United States Court for Western Oklahoma of conspiring to kidnap Charles F. Urschel at Oklahoma City, transport him into Texas, and there hold him in concealment for the payment of ransom. Each was sentenced to imprisonment for life, and on appeal both judgments and sentences were affirmed. Shannon v. United States, 10 Cir., 76 F.2d 490; Kelly v. United States, 10 Cir., 76 F.2d 847.

In 1958, Ora L. Shannon and Kathryn Thorne Kelly each filed a motion under 28 U.S.C.A. § 2255 to vacate and set aside the sentence imposed upon her. An affidavit was attached to each motion. The motions were identical but the affidavits differed. The grounds of the motions were inadequate assistance of counsel, use of testimony known to be false, denial of compulsory service of process, and conduct of the trial in an atmosphere which prevented a fair and impartial trial. The motions were heard together. Ora L. Shannon and Kathryn Thorne Kelly each testified at length. Herbert K. Hyde, United States Attorney for Western Oklahoma at the time of the trial of the criminal cases; James H. Mathers, an attorney who represented Kathryn Thorne Kelly in the trial of the criminal case in which she was convicted; J. B.

Dudley, an attorney who represented certain other defendants in the case in which Kathryn Thorne Kelly was convicted; W. C. Geers, United States Marshal for Western Oklahoma at the time of the trial of the criminal cases; and others testified as witnesses for the Government. No agent for the Federal Bureau of Investigation testified. In the course of his testimony, Hyde testified that he was in charge of the prosecution of the criminal cases; that he was familiar with the facts attending the prosecution of the cases; that he continued in the office of the United States Attorney until January 1, 1934; that while he was United States Attorney, the Federal Bureau of Investigation did not investigate or interrogate any of the attorneys representing defendants in the cases; and that any investigation which may have been made of the attorneys was begun after January 1, 1934. The files of the Department of Justice relating to the Urschel kidnapping cases consisted of seventy-three volumes. At the time of the hearing on the motions, such files were in the office of the United States Attorney at Oklahoma City. During the course of the hearing, Ora L. Shannon and Kathryn Thorne Kelly sought a subpoena duces tecum for the production from such files of all records reflecting investigation of attorneys in the criminal cases having to do with their representation of any and all defendants; all records having to do with alleged receipt of ransom money by attorneys in the cases; all records embracing visits and interviews with any and all attorneys or any other persons interviewed with respect to such attorneys; all records with respect to Luther Arnold (a witness in the trial of the criminal case in which Kathryn Thorne Kelly was convicted) relating to his participation in the Kelly case; all records with respect to Arnold's involvement in other offenses; all records reflecting agreement made by the Government with Arnold to the effect that he would not be prosecuted for any offense if he would testify against Kathryn Thorne Kelly; all records reflecting an offer of the Federal Bureau of Investigation to assist Arnold in collecting reward money; all records showing an order of a certain agent of the Federal Bureau of Investigation concerning the confinement of Kathryn Thorne Kelly and the placing of her on bread and water to weaken her morale; and all records of the Federal Bureau of Investigation showing the policy of the Department of Justice in prosecuting Mann Act cases. The court withheld issuance of the subpoena duces tecum. But after certain intermediate proceedings not having any material bearing here, the court directed that all files and reports of the Federal Bureau of Investigation pertaining to all prosecutions arising out of the Urschel kidnapping be delivered to the court for examination. The primary purpose of the proposed examination of the files was to ascertain whether any of their contents tended to contradict the testimony of the witness Hyde in respect to the non-investigation and non-interrogation of attorneys representing the defendants in the kidnapping cases; and if so to make such parts available for use for impeachment purposes in the hearing upon the motions. Acting under the direction of the Attorney General, the United States Attorney declined to make the files available for such purpose. Thereupon, the court entered an order sustaining the motions to vacate and set aside the judgments and sentences in the two criminal cases, and ordering new trials in such cases. It was recited in the order that the motions were sustained because of the Government's claim of privilege against making available to the court files which might tend to affect the credibility of the witness Hyde, particularly his testimony that there was no investigation of counsel in the criminal cases before he left office in the early part of 1934. And it was further recited in the order that such order carried no implication that under the evidence adduced at the hearing, the defendants were entitled to prevail; and also that it did not imply that the defendants were not entitled to so prevail. The Government appealed.

■ A preliminary question is presented relating to the lack of jurisdiction of this court to entertain the appeal. Appellees urge the contention that the order directing the production of the files was a mere interlocutory order from which no appeal will lie. But the argument rests upon a misconception. The Government did not appeal from the directive of the court for the production of the files. The appeal was taken from the order vacating and setting aside the judgments and sentences in the two criminal cases. Such order was predicated upon the refusal to make the files available to the court. But the scope and effect of the order was to vacate and set aside the judgments and sentences in the two criminal cases. And an order of that kind is open to appeal by the Government. United States v. Williamson, 5 Cir., 255 F.2d 512, certiorari denied 358 U.S. 941, 79 S.Ct. 348, 3 L.Ed.2d 349.

■■ The congressional purpose in the enactment of 28 U.S.C.A. § 2255, supra, was to provide that an attack upon a judgment and sentence in a criminal case which previously might have been made in a proceeding in habeas corpus should be made by motion filed in the court in which the sentence was imposed, unless for some reason the remedy by motion is inadequate and ineffective. The form of the attack under the statute is direct, but the scope is limited to matters which may be raised by collateral attack. A proceeding under the statute is an independent and collateral inquiry into the validity of the conviction. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232; Butler v. Looney, 10 Cir., 219 F.2d 146; Osborne v. Looney, 10 Cir., 221 F.2d 254; Simmons v. United States, 10 Cir., 230 F.2d 73, certiorari denied 351 U.S. 927, 76 S.Ct. 784, 100 L.Ed. 1457. It is not a proceeding in the original criminal prosecution but is an independent proceeding, civil in nature. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407.

■■ While these proceedings initiated by the filing of motions under 28 U.S.C.A. § 2255, supra, were civil in character, the plaintiffs in them were defendants in the criminal prosecutions out of which the motions arose. And when in the course of the hearing upon the motions an effort was made to compel the production of secret files of the Government, 18 U.S.C.A. § 3500 became applicable with controlling effect. That statute was enacted soon after Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, was decided. It provides that in any criminal prosecution no statement or report in the possession of the Government which was made by a Government witness or prospective Government witness shall be the subject of subpoena, discovery, or inspection, until such witness has testified on direct examination in the trial of the case. It further provides that after a witness called by the Government has testified on direct examination, the court shall, on motion of the defendant, order the Government to produce any statement, as thereinafter defined, of the witness in the possession of the Government which relates to the subject matter to which the witness has testified. It further provides that if the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use. It further provides that if the statement contains matter which does not relate to the subject matter of the testimony of the witness, the unrelated portion shall be excised in the manner therein specified. It further provides that if the Government elects not to comply with an order of the court to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed, unless the court in its discretion shall declare a mistrial. And it defines the term "statement" as used in the statute to mean a written statement made by the witness and signed or otherwise adopted and approved by him, or a tran-

scription thereof which is a substantially verbatim recital of an oral statement made by such witness to an agent of the Government and recorded contemporaneously with the making of such oral statement. When the statute is considered in its entirety against the background which attended its enactment, the congressional purpose is clear. The statute represents a studied congressional purpose based upon considerations of public policy to limit the right of a defendant in a criminal case to the production of documents from the files of the Government. By its terms, the right of a defendant to the production of documents from the secret files of the government is limited to the production of statements as defined in the statute to be used for impeachment purposes only. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287; Johnson v. United States, 10 Cir., 269 F.2d 72.

■ No evidence was introduced in the hearing on the motions which tended to show that the witness Hyde made or did not make any statement or report to the Government as defined in section 3500, supra, relating to the investigation or non-investigation, interrogation or non-interrogation, of any of the attorneys representing any of the defendants in the criminal cases. He was not asked whether he had made any such statement or report and therefore he neither admitted nor denied having done so. And no other evidence was adduced which tended to indicate whether he had or had not made such statement or report. In other words, there was a complete absence of any evidence which tended to show directly or indirectly that the secret files of the Government contained any statement or report made by the witness relating to the matter. Since the witness neither admitted nor denied making any such statement or report, his testimony was not open to impeachment through the use of statements or reports in the secret files of the Government. And in view of the rigidity of section 3500, supra, there was no sustainable basis in the record for the demand of plaintiffs that the seal of secrecy upon the files of the Government be broken and the files made available for examination to determine whether they contained a statement or report which might have the effect of impeaching the testimony of the witness in relation to the examination or interrogation of attorneys. Neither was there any sustainable basis for the directive of the court that the files at large be submitted for the purpose of a plenary inspection as to whether they contained any such statement or report. Cf. Badon v. United States, 5 Cir., 269 F.2d 75.

■ Moreover, although for the reasons already outlined we think otherwise, let it be assumed for the moment that the Government should have broken the seal of secrecy upon the files and submitted them for examination in obedience to the directive of the court. As previously stated, section 3500, supra, provides that if the Government elects not to comply with an order of the court to deliver to the defendant any statement as therein defined, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness and proceed with the trial, unless the court in its discretion shall declare a mistrial. Since the hearing was before the court without a jury, when the Government declined to make its files available for examination, the procedure open to the court under the plain command of the statute was to strike from the record all of the testimony given by the witness Hyde and proceed with the hearing. The procedure outlined in the statute was exclusive. And in view of such exclusive procedure thus blueprinted, it was not within the range of choice on the part of the court to set aside the convictions in the two criminal cases and award new trials as an appropriate sanction imposed upon the Government for its refusal to submit the files for examination.

The order vacating and setting aside the judgments and sentences in the two criminal cases is reversed and the cause is remanded.