A. H. (Herb) LAYMAN, Thomas Clinton Layman, and Andrew H. Layman, Petitioners,

v.

STATE of Oklahoma, Respondent.

No. A12912.

Court of Criminal Appeals of Oklahoma.

Aug. 29, 1960.

Rehearing Denied Sept. 21, 1960.

See, also, 350 P.2d 323.

J. A. Rinehart, El Reno, James Davidson, R. L. Davidson, Jr., Tulsa, for petitioners.

Mac Q. Williamson, Atty. Gen., Robert D. Simms, County Atty., Thomas D. Gresham and John M. Imel, Asst. Co. Attys., Tulsa, for respondent.

BRETT, Judge.

This is an original action by petition for writ of mandamus, in aid of appellate jurisdiction, brought by A. H. (Herb) Layman, Thomas Clinton Layman, and Andrew H. Layman, Jr., against Robert D. Simms, County Attorney of Tulsa County, Oklahoma, and Honorable Leslie Webb, judge of said District Court of said County. The petitioners are charged in the District Court by indictments numbers 18452, 18453, 18455, 18456, 18457, and 18458, for the despicable crimes of obtaining money from the State of Oklahoma by false pretenses, by means of certain alleged false and fraudulent, progressive, and final estimates, or claims, in payment for certain inferior materials and methods used and employed in construction of State Highway Projects #591(8), 591(10), and 591(20), commonly known as Tulsa, Oklahoma, 51st. Street Bypass.

In said petition it is alleged, in substance, that although different sums of money, different types of materials, and methods of construction are alleged in said indictments, the proof thereof by the State is dependent upon an investigation and report of James F. Curry, a professional engineer, of Muskogee, Oklahoma, who was employed by the State of Oklahoma to make numerous tests in 1959, some two years after the final approval and acceptance of the said con-struction by the Oklahoma State Highway Department, and the Federal Bureau of Roads. The inspection and investigation of engineer Curry was made in collaboration with the Oklahoma Testing Laboratory.

In co-operation, the engineer and the testing laboratory took numerous slabs from the road and sub-soil base specimens to determine thickness, plasticity index, and made other investigations and inspections of said highway job, unknown to the defendants. In addition to the foregoing, the parties conducting the inspections and examinations made a report supported by certain exhibits, such as, motion pictures, pictures, graphs, charts, computations, compilations, and conclusions, based upon said examination, and delivered the same to the County Attorney, Robert D. Simms. That all of the foregoing materials formed the very essence of the State's case before the Grand Jury, which returned said indictments against the defendant on March 15, 1960.

That the said report is highly technical, scientific, and beyond the present knowledge of defense counsel, and will place them at a great disadvantage in properly discharging their duty to provide an adequate cross examination and defense for all of said defendants unless pretrial inspection thereof is ordered. The matter providing a fair and impartial trial under the guarantee of Article II, Section 20 Oklahoma Constitution, requires that they be accorded the right of inspection of said report, pictures, and graphs, reflective of said investigation; for all of which they seek a writ of mandamus to make said matters available to them.

It is further alleged, in substance, that at the hearing on their motion to quash the indictments the defendants made application to District Judge Leslie Webb on April 19, 1960, before whom said indictments are pending, for a pretrial examination of the Curry Report; that Judge Webb ordered the production of said report for inspection by defendants, but later arbitrarily withdrew the said order, all of which is supported by the reporter's transcript of said

proceedings. Hence, the complaining defendants filed their petition in this court for relief by Mandamus.

To the petition the State made response admitting, in substance, that it was in possession by its County Attorney, Robert D. Simms, of the report, pictures, graphs, etc., sought in the petition for writ of mandamus. The State further alleges that the by-pass itself is the essence of the case, and the manner in which it was constructed, as revealed by its examination and inspection, all of which is known to the defendants. The county attorney contends that the defendants seek an unbridled examination of their files for the purpose of conducting a fishing expedition into the State's evidence. That the defendants should make application to the District Court for the writ before coming to the Appellate Court is also contended. To this latter contention the defendants assert that this they have already done with prospect of success, but only to have the door closed in their faces by Judge Webb, and further application therein would be vain and fruitless. For this reason Judge Webb was made a party hereto.

We are of the opinion that under this record the matter is properly before this court, since the trial court has already held adversely on the relief sought, in the motion to quash, and the law does not require resort to repetitious, vain, procedure in order to satisfy the whims of sheer technicality. The truth is that the defendants have exhausted all the remedies available to them in the lower court by duces tecum and by petition, encountering denial therein. We are of the opinion that this court has jurisdiction to grant the relief sought.

"We reject the implication that the Criminal Court of Appeals of Oklahoma does not have supervisory powers over all criminal actions in every court from which any appeal may be perfected to this court, directly or through an intermediate court * * *. To hold otherwise would be a demonstration of negative reasoning where positive

thinking is required. This court is supreme in all criminal appeals from state courts of this State, and has authority to issue the writs of habeas corpus and mandamus, and other writs, in proper cases. Tit. 20 O.S.1951 §§ 40 and 41. And as stated in 14 Am.Jur. p. 370: 'It is fundamental that every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.'" Inverarity v. Zumwalt, 97 Okl.Cr. 294, 262 P.2d 725, 730.

This is apparent since the relief herein sought is in aid of appellate jurisdiction. Therein lies the distinction in Ex parte McCullom, 90 Okl.Cr. 153, 212 P.2d 161, relied upon and quoted from by the respondent in the case at bar. The same is true of State ex rel. McDaniel v. Turner, 84 Okl.Cr. 247, 181 P.2d 296. These cases were not in aid of appellate jurisdiction, but in the nature of original actions.

The question presented under the facts in this case is whether the petitioners are entitled to the writ of mandamus for a pre-trial inspection of the J. F. Curry report?

In State ex rel. Sadler v. Lackey, Okl.Cr., 319 P.2d 610, 611, we stated the following as a general proposition:

"The defendant in a criminal case has no absolute right of pre-trial inspection of * * * report in possession of the prosecutor merely because he believes it may be beneficial to him. The defendant has no inherent right to examination of the state's evidence in hope that something may turn up which would aid or supply clues for gathering evidence."

In that opinion it was not our intention to make the prosecutor's files available for general fishing expeditions, or to recognize a blanket request of defendant that the prosecution be required to turn over to defense counsel all of its evidence. People v. Cooper, 3 Cal.Rptr. 148, 349 P.2d 964. Here they seek no such relief, but

only the production of the technical "Curry Report". We have held:

"In the rarest instances, reports of investigation should be required to be produced at the trial for purpose of cross-examination, and then only to meet the demands of justice."

State ex rel. Sadler v. Lackey, supra. Therein we also said:

"Demand for pretrial inspection must be determined by the facts of each case."

The State concedes that "the petitioners are entitled to an adequate opportunity at the time of trial to examine State's evidence", but they assert that they are not entitled to pretrial inspection. Palermo v. United States, 1959, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed. 1287; United States v. Kelly, 10 Cir., 1959, 269 F.2d 448, certiorari denied 362 U.S. 904, 80 S.Ct. 615, 4 L.Ed.2d 555; Walker v. State, 1959, 215 Ga. 128, 109 S.E.2d 748; Rosier v. People, 1952, 126 Colo. 82, 247 P.2d 448. The foregoing cases support this contention. They do not, however, involve documentary inspection of a highly technical report of an investigation which was scientifically completed and months in the making, and which is the very essence of the case. State ex rel. Sadler v. Lackey, supra.

The respondent State says:

"The petitioners request herein for pretrial inspection of the State's evidence should be denied for the reason that this situation is not a peculiar circumstance."

This premise necessarily calls for analysis. The record discloses that the State of Oklahoma through its highway department and the Federal Bureau of Public Roads, approved and accepted the various projects covered by the indictments some three years before the institution of the prosecutions by the County Attorney of Tulsa County, Oklahoma, before the Grand Jury. It must be presumed that proper basis for said acceptance and approval consisted of good faith inspections and examinations by these government agencies which are supposed to be manned by technical experts in the matter of building and approving roads. On this basis it must be presumed that the defendants are innocent. But now that acceptance and approval is brought in question by a commercial agency, Oklahoma Testing Laboratory, and James F. Curry, a professional engineer employed by the county attorney for the State, and upon whose technical investigation, analysis, pictures, graphs, and report, the Grand Jury indictments are substantially based. The very nature of the engineer's report makes its production for pre-trial inspection imperative to the ends of justice since this record discloses the State's case depends almost entirely upon this report and its computations etc. as revealed by the oral testimony of Mr. Curry on the motion to quash when he used the report to testify from. It appears the report was long and that he read and testified before the Grand Jury two days from it. We do not believe that it would be reasonable to hold otherwise than that as evidence it is the essence of the State's case. Moreover, the record reveals that the Curry Report and the findings of the Oklahoma Testing Laboratory are of a highly technical character with which persons not in the engineering profession (such as defense counsel), would be only slightly conversant, and which Mr. Curry testified that it was necessary for him to simplify for the Grand Jury. It thus becomes apparent that the defendants' right to a fair trial may hinge upon whether this report is made available for their inspection as a means of preparation for an intelligent cross-examination. Defense cannot be expected to conduct an intelligent cross-examination of the engineer or testing laboratory experts with only a spur of the moment look at the report at the time of trial. The right to adequately cross-examine is an essential part of a fair trial, and one of the most valuable rights given by law. Megown v. State, Okl.Cr., 300 P.2d 673. The very essence of a

fair trial may be defeated if the defendants are permitted only a cursory examination of this highly involved technical matter at the time of trial before cross-examination. In the trial on the matter on the merits of the case, these defendants should be accorded that degree of fairness at the hands of the State which should characterize all criminal proceedings. The state cannot in fairness say, we have a technical report, the very essence of our case, which we are willing for you to see and examine only after you have been "ambushed" with it. We are in accord with State v. Thompson, 338 P.2d 319–324 wherein the Washington court said:

" ' "In modern days, courts strive to see that justice shall prevail in a given case rather than that there shall be a slavish adherence to well-beaten tracks. Just as in civil cases, where there originally was no discovery or inspection and that procedure developed through gradual evolution, there is now slowly being born a tendency to apply that procedure in certain proper cases in criminal courts. There is no good reason why in a proper case, in the exercise of a sound discretion, the courts of criminal jurisdiction should not be permitted to make available to a defendant before trial, by discovery and inspection, legal evidence in the possession of the district attorney. The primary object of the criminal court is to render substantial justice and not to obtain a conviction." * * * Application of Hughes, 181 Misc. 668, 672–673, 41 N.Y.S.2d 843, 847 (Sup.Ct.1943).' 56 Col.L.Rev. 19, 30. * * *

"The phrase, 'trial from ambush,' pretty well characterizes a certain viewpoint or nostalgic legal philosophy accorded considerable credence in the not too distant past. The viewpoint, belatedly, can be evaluated as both irrational and archaic—a hangover from a more immature era in our evolving Anglo-American system of jurisprudence. Today, through the implementation of discovery and pretrial techniques, 'trial from ambush' may be eliminated, or at least substantially circumvented, as the modus operandi in the trial and disposition of disputes between citizens, and in other civil causes of action. It seems to me that in criminal cases there is even more reason than in civil cases for giving less leeway and sway to the motions of 'trial from ambush' * * *."

See also People v. Chapman, 52 Cal.2d 95, 338 P.2d 428. Herein, the state's untenable position is, we are not concerned with the fact that your counsel is not an engineering specialist, who without preparation is intellectually unprepared to cope with the technical terminology of the report, its intricacies, and its involvements. Surely the State is entitled to its "pound of flesh" if the facts warrant it, but it should not be permitted to draw one drop of blood through unfairness or the medium of unjust surprise, as was substantially said in State ex rel. Sadler v. Lackey, supra. Surprise in the trial of cases often breeds prejudice and does little or nothing to implement justice. Well reasoned law seeks in its procedural aspects only to establish truth in the administration of justice. Pretrial inspection of the Curry report in the instant case will promote such an objective whether the prosecution ends in conviction or acquittal and with which we are not now concerned, but only with the mode of its attainment.

Another cogent reason why this report should be made available is that a trial should be orderly and conducted without unnecessary delays. It is only common sense to conclude that a report such as this one could not be examined and digested after direct examination in preparation for cross-examination without great delay and disruption of the proceedings. This could be so unfair to the defendants as to result in reversal, unnecessary expense and unproductive delay.

The application of these principles tend to promote " * * * the establishment of truth in a trial fair to defendant and state alike. Powell v. Superior Court, supra, 48 Cal.2d at page 707, 312 P.2d 698; Jencks v. United States, supra, 353 U.S. at pages 667–668, 77 S.Ct. 1007; see People v. Riser, supra, 47 Cal.2d at page 585, 305 P.2d 1." Tupper v. Superior Court, 51 Cal.2d 263, 331 P.2d 977, 980. Simply stated, if this report is founded upon truth, making it available will not change the facts, but will expedite orderly proceedings both at the trial and on appeal. In arriving at these conclusions the logic of State ex rel. Sadler v. Lackey, supra, has been extended to cover the peculiar nature of the situation, but they are not based upon that case alone, but by the rules announced in 23 C.J.S. Criminal Law § 955, p. 262, note 45:

> "The court has discretionary power to permit the accused to inspect before trial documents or articles in the state's possession which form the basis of the charge or which are material evidence."

and note 51, p. 264, or where the document "or writings are of voluminous or complicated character."

In State ex rel. Wagner v. Circuit Court of Minnehaha County, 60 S.D. 115, 244 N. W. 100, 102, examination was sought of certain field notes, memoranda, original figures, estimates, and drawings made by the engineer in charge of a certain highway and bridge project. This data was seized by, and was in possession of the prosecutor, who resisted its pretrial examination. The court found that the matter would be material to the State's case and was subject to pretrial inspection. The South Dakota Court held:

> " * * * from the record, as it discloses the character of the instruments, this court is not willing to say that these exhibits cannot become material and be received as evidence * * * To now say that the original figures made by Griffith in connection with his work on these different bridges could not become material as evidence we do not believe would be justified or reasonable. The defendant is entitled to a reasonable opportunity to prepare for trial; intricacies in figures, no doubt, will be involved. We are of the opinion that an inspection at this time might avoid considerable delay during the trial."

The determinative point in both that case and the case at bar is that the matter involved is highly voluminous, specialized, and the essence of the State's case. Finally, as was said in Walker v. Superior Court, 155 Cal.App.2d 134, 317 P.2d 130, at page 135:

> "Unless the defense is allowed to see the report it may be most difficult for the petitioner to properly prepare for trial. We think that in the interest of justice the trial court should have ordered a copy of the report given to the petitioner * * * ' "That it was desired that the state's evidence remain undisclosed, partakes of the nature of a game, rather than judicial procedure. The state in its might and power ought to be and is too jealous of according a defendant a fair and impartial trial to hinder him in intelligently preparing his defense and availing himself of all competent material and relevant evidence that tends to throw light on the subject-matter on trial." ' Powell v. Superior Court, 48 Cal.2d 704, 312 P.2d 698–701."

The logic of this quotation is especially applicable to the situation concerning the Curry Report.

When an application for pretrial inspection of technical reports is made, the trial court has a broad judicial discretion to grant or refuse, and only when such discretion has been abused will relief by mandamus be granted. Walker v. Superior Court, 155 Cal.App.2d 134, 317 P.2d 130; State ex rel. Sadler v. Lackey, supra.

We are of the opinion that Judge Webb abused his discretion in not carrying

through his originally indicated proposal to make this report and its attached graphs, computations, photographs, etc., available for pretrial inspection to these defendants. The writ of mandamus is accordingly entered requiring that defendant be provided a copy of said report or at least twenty days examination and inspection thereof. The right herein ordered does not encompass an unbridled examination of the County Attorney's files, but only the Curry Report as hereinbefore described.

POWELL, P. J., and NIX, J., concur.