Elias Enrique MELCHOR, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13496.

Court of Criminal Appeals of Oklahoma.
April 14, 1965.

Rehearing Denied Aug. 2, 1965.

Purman Wilson, Purcell, and W. Howard O'Bryan, Jr., Oklahoma City, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Jack A. Swidensky, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Elias Enrique Melchor, hereinafter referred to as the defendant, was charged in the District Court of Cleveland County with the crime of Murder. He was tried by a jury, found guilty, of the lesser and included offense of Manslaughter First Degree, and sentenced to twenty years in the penitentiary. From that judgment and sentence he has filed his timely appeal in this Court alleging several assignments of error.

The defendant, the deceased—William Perkins, and his wife—Jewel Perkins, had been to several beer taverns the night of the crime. Mrs. Perkins testified that the defendant had a gun, and while they were on their way to a bowling alley, he began firing it out the window of the car. That her husband took the gun when they left the bowling alley, and hit it on a curbing. She said the barrel was broken off, and that she saw defendant pick up the pieces and put them in his pocket. That they all got in the car and drove to the vicinity of Sunnylane and Highway 37, where her husband told her to get out and go home. After a little scuffle, she went down the road, where the police later picked her up. She said this happened somewhere around 6:30 a. m.

Lynn Marvel, Chief of Police at Moore, received a call about 7:50 a. m. to go to Highway 37 and Sunnylane. He was accompanied to the scene by Officer Jimmy Dodd. They found Mrs. Perkins—very drunk—about a fourth of a mile from the car, petting a horse. They proceeded to the car and found two bottles of whiskey inside, and saw defendant and the deceased in a bar ditch on the north side of the road. They also found some .22 shells—three hulls and one that hadn't been fired. Officer Dodd testified he found a gun, a card case, and some keys some distance from the body, all belonging to the defendant. They also found an empty .22 box.

Mrs. Fleming, whose house was only a short distance from the scene, testified that she heard 3 or 4 shots that morning, that she walked out on her porch and saw a man out near her driveway, walking east from her house. That he was dressed in black pants and white shirt, and was weaving as he walked. That defendant was a few yards behind him dressed in a dark suit and light shirt. She testified further:

"Q. What was the defendant doing at this time?

"A. He was walking down the road.

"Q. Behind the other person?

"A. Yes.

"Q. Did he do anything unusual, the Defendant?

"A. Yes, I had heard the deceased, he was muttering something then he said quite loudly, 'Don't shoot—', may I use the profanity that he used?

"Q. Well, I'm sure the ladies will understand.

"A. Well, anyway, he said 'shoot', 'Don't shoot, I'm leaving', and I thought, who don't shoot.

"Q. Tell us what you heard?

"A. Well, that was the reason, though, that I looked back to see who he was talking to, and the defendant was walking down the road towards him, behind him, quite a pace, he was moving rather fast and walking straight and fast.

"Q. You say the victim was weaving but the defendant was walking straighter than the victim? * *

"A. What did he do next? The defendant?

"Q. Well, in just a matter of seconds after I looked at him, he raised his hands, almost to shoulder level and straightened it out toward the deceased and pulled the trigger, obviously, on the gun. I couldn't see the gun in his hand, I could hear it snap when he pulled the trigger.

"Q. How many times did the defendant fire?

"A. Three or four times. * * *

"Q. Which direction did he fire the gun?

"A. Toward the defendant. I mean, toward the deceased.

"Q. About how far behind him, about how far behind the deceased was the defendant when he fired the shots?

"A. Well, actually, there was not any shots fired, he snapped, I could hear the gun snap, it didn't fire, I should imagine about the length, breadth of the Courtroom.

"Q. This direction?

"A. Yes. * * *

"Q. What did the defendant do then, if anything?

"A. He just kept walking down a few steps and then reached into his pocket, took out something and started reloading the gun, obviously, a shell box.

"Q. BY MR. WILSON: Object to that as not responsive.

"BY THE COURT: Sustained and the jury is admonished to disregard the last portion of the answer.

"Q. Then what?

"A. Took something out of the little red and green box and he put it into the gun.

"Q. And after he did that what happened?

"A. They kept walking straight down the hill and he was catching up with the deceased. * * *

"Q. Now, did you keep watching the defendant and the deceased?

"A. Yes, until they went down the hill out of sight.

"Q. And did anything unusual happen immediately after they went out of sight?

"A. Very shortly, just in a few seconds after that I heard some shots down at the bottom of the hill.

"Q. Were they snaps or shots?

"A. They were shots.

"Q. How many did you hear?

"A. I distinctly remember four, there may have been more."

Her husband testified that as he was doing his morning chores, he saw the defendant walking toward a plum thicket, heard a woman's voice saying "No, don't, no, don't", and then he saw her walking west on the road towards Moore. That he saw the defendant and the deceased in the car. That the deceased got out of the car, went around to the front and raised the hood on the car and then slammed it down and started walking down the road, east. That the defendant stayed in the car for a few minutes, and then got out and started walking east toward the deceased. That he went on into the barn, and then heard three shots; he went on doing his chores until his wife came out to the barn, and told him what she had seen and heard.

Another witness, Lois Milligan testified she saw defendant sitting at the side of the road with the body at approximately twenty minutes till eight—there were three other people in her car at the time.

Carl V. Hall testified that he heard some shots and his dogs were barking, and he saw the defendant throw some objects over the fence, and then he fell down in the bar ditch.

The defense consisted of some character witnesses, and the jailer; the defendant did not take the stand to tell his story.

The defendant raises three propositions of error. (1) That the county attorney made a prejudicial statement to the witnesses at the beginning of the preliminary hearing to the effect that he was sorry that they had been taken away from their business, that he did not subpoena them, and that the fault was with the defendant. He contends this prejudiced him and deprived him of a fair and impartial trial.

Inasmuch as this does not appear in the transcript, we will follow our holding in

the case of Whisenhunt v. State, Okl.Cr., 279 P.2d 366:

"The Criminal Court of Appeals will consider only such matters that appear in the record of the trial below as reflected in the case-made."

(Defense counsel raised this in his Motion to Quash and Set aside the Information, appearing at pg. 22 of the casemade, along with numerous other allegations. This was overruled by the District Judge on pg. 176.)

Defendant's second and third propositions of error—(2) that the state refused to allow the plaintiff in error to interrogate certain material witnesses, thereby depriving him of a fair and impartial trial; and (3) that the conduct of the preliminary hearing was such that it was for the sole benefit of the state; will be discussed next.

First, let us briefly outline the sequence of events, as shown in the record now before the Court.

The complaint was first filed on May 6, 1963. *It included the list of witnesses for the State.* On May 8, 1963, defense counsel filed a Motion to interrogate these witnesses, to compel them to talk to him. This was overruled, and the preliminary set for June 6th. *Not until June 5th* did defense counsel file for any witnesses to be subpoenaed. The Preliminary was held, and defendant bound over to District Court for trial on the charge of Murder. Defense counsel filed a Motion to Quash and set aside the Information on July 8th; this was overruled, and the order by Judge Brown is quite explicit. He stated:

"* * * it is the finding of the Court that defendant has wholly failed to make any showing of reasonable diligence to procure the attendance of the witnesses endorsed on the Preliminary Complaint whose testimony he desired to offer at the preliminary hearing. On the contrary, defendant announced ready and proceeded to participate in the hearing without objection. Therefore, the committing magistrate's refusal to continue the hearing 'as Infinitum' was not error. It is conceivable that an accused might not ever be anxious to go to trial, and might by dilatory practice defeat the public's right to a speedy trial.

"Defendant cannot be heard to complain that he was not furnished a complete list of the witnesses to be used by the State in the trial, together with their post office addresses, for the Constitution of this State only guarantees him that information at least two days before the trial. This defendant was provided the names and addresses of the witnesses used at the preliminary hearing.

"The defendant cannot be heard to complain about the committing magistrate's failure to admit evidence or exhibits which were not produced, identified or offered. It might further be noted that it was a matter of general knowledge and public information that the County Sheriff and Evidence Officer were in Florida extraditing a prisoner. Such knowledge might suggest to prudent defendants questionable benefits of announcing 'ready'—if one knows in truth and fact that he will not be ready to offer his evidence when it becomes his turn.

"The quotation from the committing magistrate's remarks at the time of binding over defendant, and the actual order signed by the committing magistrate binding him over for trial in the District Court are so dissimular as not to require further elaboration.

"Defendant's objection to the committing magistrate's ruling, if any, on his motion for the right to interrogate the State's witnesses is without substantial merit. Defendant's motion or application wholly fails to comply with the requirements of the Statutes of the State of Oklahoma so far as the granting of the Order of the Court to depose witnesses is concerned.

"Therefore, IT IS ORDERED, ADJUDGED, AND DECREED by the Court that the Motion to Quash and

set aside the Information be overruled, exceptions, allowed defendant, and defendant held for arraignment in the District Court, all without prejudice to his application for any other relief to which he may show himself entitled.

/s/ Elvin J. Brown

Judge"

On October 8, 1963, Judge Brown issued an order allowing the exhibits to be held by the Sheriff for examination by defense counsel. But he was not satisfied with this and filed an application on October 9, 1963 to take testimony of witnesses pertaining to the exhibits. This application also was granted by Judge Brown. A court minute of October 11, 1963 shows that defendant *waived* depositions of the witnesses he had desired. On the same day he filed a demurrer to the information, waived further time to plead, and entered his plea of "Not Guilty". *Parties agreed* to October 15, 1963 at 9 a. m. as the trial date. On October 15th defendant, through his counsel in open court, *announced ready for trial.*

■ This Court has held, as in the case of Blake v. State, Okl.Cr., 375 P.2d 270:

"If the defendant upon arraignment pleads to the merits and enters on the trial, he waives the right to preliminary examination, or, if one was held, any irregularities therein."

See, also Muldrow v. State, 16 Okl.Cr. 549, 185 P. 332.

Defense counsel alleges that the county attorney withheld information and addresses from him, thus denying him the right to talk to the witnesses. With this we cannot agree. Defendant had the names and addresses of all of the witnesses one month before the preliminary. He contends that the address of one of the witnesses, Mrs. Jewel Perkins, was incorrect. However, at pg. 192 of the casemade, the witness testified at the district court trial that the address on the complaint was, in fact, the address where she lived.

■ Defendant further complains because the county attorney did not call all of the witnesses listed at the preliminary hearing, and that defendant should have been entitled to cross-examine all of these witnesses *as a matter of right*. However, he does not support this with any cited authority; nor do we find it to be the law in this State. Inasmuch as he had sufficient opportunity to subpoena any of the witnesses he desired to question a full month before the preliminary, this Court does not consider this complaint meritorious.

■■ Defendant further complains because the committing magistrate would not order the county attorney to allow them to examine certain exhibits. Our Court stated in the case of State ex rel. Sadler v. Lackey, Okl.Cr., 319 P.2d 610:

"The defendant has no inherent right to examination of the state's evidence in the hope that something may turn up which would aid or supply clues for gathering evidence."

The record does not show that defendant made any reasonable or diligent effort to obtain the attendance of witnesses whose testimony he desired to place before the committing magistrate. Nor did he make any showing that valid evidence could be produced or would be material to the hearing.

It was for this reason that the committing magistrate denied the motion for continuance; that the district judge overruled the motion to quash and set aside the information; and the reason this Court refused to issue the Writ asked for in cause #A13,413.

■■ Defense counsel, several times in the record, stated they *anticipated* that the witnesses would be called at the preliminary by the state. This Court further stated in the Lackey case, supra:

"But, the right of pre-trial inspection should not be granted for the purpose of blunder-buss roving so that the privilege would reach the stature of an absolute right."

The trial court had the discretionary power to grant or deny such request, and this Court held in the later case of Layman v. State, Okl.Cr., 355 P.2d 444:

"When an application for pretrial inspection of a technical report in possession of the State is made in a criminal case, the trial court has a broad judicial discretion to grant or refuse, and only when such discretion has been abused will relief by mandamus be granted in aid of appellate jurisdiction by the Court of Criminal Appeals."

And, further, that this was only in cases involving an intricate, specialized report of a highly technical and scientific nature; and that right does not permit unbridled inspection of the prosecutor's files.

In the case at bar, even when the district judge granted defense counsel permission to examine the exhibits and the witnesses he required, he waived same. Therefore, we cannot see any abuse of discretion on the part of the trial judge.

 Most of defendant's complaints lie in the preliminary hearing. Our Statute is clear and the rulings of this Court are clear on what is necessary for a preliminary hearing. See, Parmenter v. State, Okl.Cr., 377 P.2d 842:

"A preliminary hearing is not a trial, since it is not conducted to determine the guilt of accused, but only the two issues—was a crime committed, and is there probable cause to believe the accused committed it."

22 C.J.S. Criminal Law § 331, page 842, defines a preliminary hearing as follows:

"A preliminary hearing is not a trial, but is merely a course of procedure whereby a possible abuse of power may be prevented, and the accused discharged or held to answer, as the facts warrant. Its purpose is to determine whether an offense was committed and whether there was probable cause to believe that the accused was guilty thereof."

 Certainly, the evidence at the preliminary hearing was sufficient to believe a crime had been committed, and probable cause to believe that the defendant herein had committed it.

As we stated, defendant did not allege any defense—either at the preliminary hearing, or at the district court trial. There is no reason to believe that the jury's verdict would have been any different had all of the witnesses testified at the preliminary hearing. It had no bearing on the evidence submitted to the jury. They based their verdict on what was introduced in the district court trial, and returned a lesser charge of Manslaughter First Degree.

This Court finds no error meritorious of reversal. Therefore, the judgment and sentence of the trial court is hereby Affirmed.

BRETT, J., concurs.

BUSSEY, P. J., not participating.