Deola Fisher Sr. *v.* State of Arkansas

5220                               408 S. W. 2d 894

Opinion delivered December 5, 1966

*Hall, Purcell, Boswell & Tucker,* for appellant.

*Bruce Bennett,* Attorney General; *H. Clay Robinson,* Asst. Atty. Gen., for appellee.

PAUL WARD, Justice. Appellant, Deola Fisher Sr. was charged and tried for murder in the first degree for the killing of Peter Collier by shooting him with a pistol. The jury returned a verdict of murder in the second degree and fixed the punishment at fifteen years in the penitentiary.

Collier was shot about seven p.m. while he was standing in front of a cafe in Benton. Nearby witnesses saw the shooting. Collier was rushed to a hospital where he later died. Appellant makes no contention here that there is any insufficiency of evidence to sustain the conviction for murder in the second degree.

On appeal, appellant argues fourteen separate points for a reversal, however, we find that all issues raised can be more conveniently and just as adequately treated under the eight subdivisions hereafter discussed.

*One.* We find no reversible error in the trial court's failure to continue the trial. Appellant was charged on November 5, 1965, and the trial was set for December 7, 1965. On Motion of appellant the case was continued until January 3, 1966, but on December 27, 1965 appellant asked for a continuance until March 29, 1966 (the beginning of the next term of court). This request was denied, but the court did grant a continuance until February 14.

The granting of a continuance is largely in the discretion of the trial court, as we have frequently held. We are unable to say the court abused its discretion in this instance. The only specific cause urged by appellant for a continuance was ''that one eye witness, Robert Higgs, who was probably closer to the scene of the encounter than anyone else was absent . . . .'' although he

had been subpoenaed. However, no showing is made as to what the absent witness' testimony would have been or whether it would be corroborative, as is required under our decisions. *Gallaher* v. *State*, 78 Ark. 299, 95 S. W. 463 and *Caldwell* v. *State*, 214 Ark. 287, 215 S. W. 2d 518. The record here discloses that the absent witness was only one of several who saw the shooting.

*Two.* During the trial appellant, on six separate occasions, asked for a mistrial, and each time the request was denied by the court. These are alleged to constitute reversible error, but we do not agree.

(a) At the beginning of the trial and in preparing to select the jurors, the judge asked the members of the special panel if there was any reason why they could not serve. He then said it would be to their benefit to serve because they would be excused from jury service for the next two years. It appears the judge was in error in the last statement, but even so we see no possible prejudice resulting to appellant, and none is pointed out by appellant.

(b) On *voir dire* examination of the jurors the court stated that both the deceased and appellant were members of the Negro race, and then the prospective jurors were asked if they knew of any reason why they could not give the defendant a fair trial. Their answer was in the negative. It appears to us that this information would tend to help and not to hurt appellant because the jury was certain to know he was of the Negro race.

(c) The Prosecuting Attorney asked one of his witnesses a question, and the answer received was a "surprise". Then the witness was asked: "Do you remember telling me anything different from that, John"? The District Attorney then stated: "Your Honor, I am surprised. This witness has made a different statement to me", but the trial court refused to allow the matter to proceed further. In the first place, since the witness

appeared hostile, we think it would have been proper to allow further questioning. *Ray* v. *State,* 102 Ark., 145 S. W. 190, and *Shands* v. *State,* 118 Ark. 460, 177 S. W. 18. Also, we think the matter tended to help rather than hurt appellant.

(d) During the closing argument of the State's Attorney he mentioned the fact that never before in that county had a member of the Negro race, upon conviction, received a life sentence. At that instant appellant moved for a mistrial, which was refused, and the court was not asked to admonish the jury. It is well settled by many decisions of this Court that the trial judge is vested with wide discretion in determining the propriety of counsel's remarks to the jury. *Greene* v. *State,* 38 Ark. 304; *Lemuels* v. *State,* 113 Ark. 598, 166 S. W. 741: *Head* v. *State,* 221 Ark. 213, 252 S. W. 2d 617. Moreover, the verdict shows the jury was not persuaded by the remarks.

We have examined other contentions by appellant that a mistrial should have been granted, but find no reversible error in any of them.

*Three.* Appellant challenged two jurors for cause, but was refused by the trial court. The only basis for the challenge was that these jurors were employed at the same place where the deceased was employed. It is admitted by appellant that no actual prejudice was shown, and we think none was indicated.

*Four.* In preparing its case the State took a statement from one of its witnesses whose name was on the information. Appellant requested the trial court to compel the State to turn the statement over to him. The court refused the request, and we think properly so. In the case of *Edens* v. *State,* 235 Ark. 178, 359 S. W. 2d 432, this same issue arose and we said:

"... The defendant was not entitled to receive copies of the statements that the prosecuting attor-

ney had obtained from the various witnesses for the State, as this was a part of the prosecuting attorney's work papers . . . ."

*Five.* At the trial the Chief of Police was allowed, over the objections of appellant, to testify concerning a certain statement appellant had made to him after the arrest was made. At the time of the arrest the officer asked appellant why he killed the deceased, and the prompt reply was that he needed killing. It is not contended any force, promise or persuasion was used to induce appellant to talk, but it is contended that the error consists in the failure to show appellant was first advised of his constitutional rights—such as to keep silent and to be represented by an attorney.

We think no reversible error has been shown, based on our holding in the case of *Turney* v. *State,* 239 Ark. 851, 395 S. W. 2d 1. In the case (as shown at page 854 of the Ark. Reps.) the arresting officer asked the accused why he would get involved "in something like this", and the accused promptly replied he didn't know and that he must have been out of his mind. In holding the officer's testimony regarding that incident was proper, we said: "The simple statement, above quoted, was responded to by the spontaneous admission of guilt by Turney".

We also point out this case was tried in February, 1966 and therefore is not controlled by the *Miranda* case which did not (according to *Johnson* v. *New Jersey,* 384 U. S. 719) become applicable to cases tried before June 13, 1966.

*Six.* Appellant contends it was reversible error for the trial court to allow the former employer of the deceased to sit behind the witness stand. Appellant makes no attempt to show any actual or suspected prejudice against him. This was a matter which addressed itself to the sound discretion of the trial court, and we cannot say he abused such discretion in this instance.

In fact it was not known that he would be a witness until he was called to testify.

*Seven.* Reversible error is predicated on the failure of the trial court to give an instruction on manslaughter. It is true the court refused one such instruction, but this was not error because the court had already given instruction No. 2 on manslaughter, as requested by appellant.

*Eight.* Finally it is urged that the trial court erred in limiting, in time, the argument of one of appellant's counsel, but again we cannot agree. Here is substantially what occurred during the argument:

"The Court: Mr. Boswell, how much longer do you propose to argue?

"Mr. Boswell: I didn't know the Court had put a time limit on argument.

"The Court: I didn't put a time limit on it. I am going to give your associate time to argue in the morning. It is after five o'clock. We are going to finish with yours this afternoon if we stay til nine o'clock."

Due to the lateness of the hour, we think the court's question was pertinent.

Finding no reversible error, the judgment is affirmed.

Affirmed.