The STATE of Oklahoma ex rel. S. M. FALLIS, Jr., District Attorney of Tulsa County, Petitioner,

v.

Honorable Earl TRUESDELL, Special District Judge, 14th Judicial District, Tulsa County, Respondent.

No. A–17236.

Court of Criminal Appeals of Oklahoma.

Feb. 9, 1972.

S. M. Fallis, Jr., Dist. Atty., Tulsa, for petitioner.

M. M. Dyer, Tulsa, Jack B. Sellers, Sapulpa, for respondent.

SIMMS, Judge:

Original proceedings wherein Petitioner seeks a Writ of Prohibition to stay the order of the Respondent, made during a preliminary hearing, directing Petitioner to advise the court of any and all statements in his possession making reference to certain testimony given by a witness in said Preliminary Hearing on a perjury charge.

While the Respondent did not set out what would have occurred upon compliance with his order, it follows, both from the arguments presented and the record, that the Respondent would have either undertaken an "in camera" inspection of the statements or devised some alternative method by which the defendant in the perjury case could have examined the statements prior to continuing the cross-examination. This matter came on for hearing and oral arguments before this Court on February 1, 1972.

The record indicates that Mary Bishop McDonald is charged in the District Court of Tulsa County, Oklahoma, with the crime of Perjury in Case No. CRF–71–2295, as a result of certain sworn testimony given in Tulsa County District Court November 22, 1971, in a habeas corpus hearing for the defendant's husband, Albert McDonald, wherein McDonald sought to block extradition proceedings brought by the State of Arizona in connection with a December 4, 1970, armed robbery in that jurisdiction.

Mary McDonald testified that McDonald was with her in Bartlesville on the date in question and not in the State of Arizona. The state's witness in the perjury case, Georgia Whipple Jenkins, testified at the perjury preliminary hearing that she was in Phoenix, Arizona on December 4, 1970, that she saw Albert McDonald there and that she spent time in his company.

She testified on cross-examination that during the month of October she gave a recorded but unsworn statement to the District Attorney's office in which reference was made to Albert McDonald's whereabouts between December 2, 1970 and December 8, 1970. At that point, defense counsel for Mrs. McDonald moved the court to order production of all such statements for inspection before continuing cross-examination. The court on the following day ruled in the defendant's favor on the motion, and the petitioner then sought extraordinary relief in this Court.

The general rule in this area, adopted by this Court prior to the enactment of any statutory authority, is set out in Shapard v. State, Okl.Cr., 437 P.2d 565 (1968).

In *Shapard,* supra, we said of efforts by the defendant to obtain pre-trial inspection of statements in the District Attorney's file taken from prosecution witnesses, one of whom had been extensively cross-examined at a preliminary hearing, and the other who had not:

"Pretrial discovery and inspection by the defendant of written statements of witnesses or prospective witnesses for the prosecution have been generally denied. Thus, it has been held that an accused is not entitled to discovery and inspection of statements of a prosecution witness in the possession of the state, of the tran-

script of the statement of a state witness taken before a prosecuting officer preparatory to trial, or of the 'work product' of the prosecutor consisting of statements signed by others than the defendant." 437 P.2d at 594.

While there are no Oklahoma cases defining "work product" as it relates to criminal prosecutions and more specifically, the prosecuting attorney's work product, certain other jurisdictions, surveyed in Petitioner's brief, provide such definitions.

Statements of witnesses gathered by officers and investigators for trial, some sworn and some not are defined as "work product" in a series of Florida cases. Adjmi v. State, Fla.App., 208 So.2d 859 (1968); Jackman v. State, Fla.App., 140 So.2d 627 (1962); and, Bedami v. State, Fla.App., 112 So.2d 284 (1959).

Arkansas and Missouri have adopted similar positions, not only with regard to defining "work product", but also in denying access to same unless it is either introduced at the trial or used to refresh the witnesses' memory. See, Fisher v. State, 241 Ark. 545, 408 S.W.2d 894 (1966); and, State v. Smith, 431 S.W.2d 74 (Mo.1968).

Coming forward from *Shapard,* supra, this Court in Doakes v. District Court of Oklahoma County, Okl.Cr., 447 P.2d 461 (1968), wherein the defendant, who was charged with manslaughter in the death of her husband, sought to force pre-trial inspection of statements made by her three children who witnessed the crime, held such statements, by persons other than the defendant, and also the "rap sheet" of the victim are in the nature of the prosecution's "work product" rather than technical reports.

The "technical versus non-technical" distinction becomes relevant in considering this Court's decisions in two earlier cases, Layman v. State, Okl.Cr., 355 P.2d 444 (1960); and, State ex rel. Sadler v. Lackey, Okl.Cr., 319 P.2d 610 (1957); both of which dealt with the production of either highly technical or physical evidence and reports concerning same in the possession of the prosecution. However, those cases are distinguishable from the case at bar, not only because of the "technical" distinction, but also because ample opportunity for cross-examination prior to trial was afforded and additionally, as we held in *Sadler,* supra, and reaffirmed in *Doakes,* supra:

> "In the interest of justice, for good cause shown, where the denial of pre-trial inspection of a report in the possession of the prosecution might result in a miscarriage of justice, the trial court has the inherent right in exercise of sound judicial discretion to grant the remedy of pre-trial inspection of a report in the prosecution's possession *where the primary source is no longer in existence and the report constitutes the only available source of evidentiary information.*" (Emphasis added)

Following the above cited decisions, the Legislature expressed its opinion by providing the defendant with a statutory right to any *sworn* statements with the enactment of 22 O.S., § 749, in 1969:

> "[A] In the investigation of a criminal offense, the district attorney or any peace officer may take the sworn statement of any person having knowledge of such criminal offense. Any person charged with a crime shall be entitled to a copy of any sworn statement upon the same being obtained.
>
> [B] If a witness in a criminal proceeding gives testimony upon a material issue of the case contradictory to his previous sworn statement, evidence may be introduced that such witness has previously made a statement under oath contradictory to such testimony."

Words and Phrases defines "sworn statement" as a " * * * statement under oath, * * *," 40A Words and Phrases, Sworn Statement 628.

There is nothing in the record in this case, by way of proof or testimony, to indicate the statements in question are sworn, only that statements were made.

This Court again denied access to the prosecution's work product in Stevenson v. State, Okl.Cr., 486 P.2d 646 (1971), wherein reference was also made to the above-cited statute albeit incompletely. The reference at page 649, quoting the statute, omits the word "sworn" preceding the word "statement," which omission we hereby rectify.

■ In *Stevenson,* supra, we again held to the view that certain evidence of a technical nature, confessions and statements of the defendant, should be available to him, as well as placing upon the prosecution the duty to provide what evidence, if any, it had in its possession which would negate the guilt of the defendant or lessen his punishment, but the prosecution's work product remains outside the pale and a wholesale fishing expedition into the prosecution's file on the off-chance of turning up something helpful to the defendant will not be allowed.

There appears in the record nothing to persuade this Court that the defendant would be prejudiced by denial of access to any statements made to the prosecution by the witness Georgia Whipple Jenkins concerning the specific dates, particularly in view of the extensive cross-examination.

Finally, we observe in studying the authorities on the points under discussion, a great deal of authority based on the case of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and the subsequent enactment of the Jencks Act, 18 U.S.C. § 3500, is cited for production in federal criminal cases of statements or reports of government witnesses who have testified on direct examination so that such statements may be examined by the defendant for possible impeachment purposes.

Those authorities have no bearing on the instant case by virtue of the United States Supreme Court's decision in United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), wherein the Court held that both the case law and the subsequent statute laid down rules for the trial of federal criminal cases before federal tribunals, that neither the decision nor the statute were cast in constitutional terms, and that neither applied to the trial of criminal cases in state courts.

■ We, therefore, find and conclude that the statements sought constitute a portion of the prosecution's "work product", and that the defendant in the perjury case, afforded extensive cross-examination latitude below, is not entitled to them.

Writ granted.

BUSSEY, P. J., and BRETT, J., specially concurring.

BRETT, Judge (specially concurring).

I concur in this opinion, but feel obligated to express my views on certain aspects not specifically stated in the opinion.

In the first instance, I believe the petitioner's motion was prematurely filed; and under Oklahoma Procedures I question the authority of the magistrate to order the production of the requested items under discovery procedures at the preliminary examination. As has been stated many times, the preliminary examination is not a trial; but, the preliminary examination does provide certain discovery tactics for defense counsel, which result from the examination and cross examination of witnesses. I believe the motions for discovery should be filed in the trial court prior to the date set for trial. At the hearing on these motions, the trial court must allow certain items by statute; and with reference to discovery procedures, beyond the statutory authority the trial court has certain discretionary authority.

I also agree that the defendant is not entitled to inspect the "work product" of the prosecutor, unless such item, or items, tends to negate the guilt of the accused. Whether or not such negative action might result from the work product is to be determined by the prosecutor, who also has an obligation to voluntarily disclose that information to the accused. With reference to what comprises the prosecutor's

work product, the ABA, Standards Relating To Discovery and Procedure Before Trial, October, 1970, in the commentary under § 2.6, p. 89, is the following:

"First, 'work product' has proved to be much too elastic to indicate by itself the nature of the matter which should generally be immune to disclosure."

Thereafter, on page ninety-one, the commentary states further, in an effort to become more specific concerning the "Work Product":

"The following would be protected: notes or outlines of trial strategy, of arguments to be made, of authorities to be cited, and of questions to be asked witnesses; also memoranda between personnel in the office on legal questions, evidence, prospective jurors, or other aspects of the case except medical, scientific, and experts' reports . . . ; records of an attorney's travels with respect to a case; summaries and analyses of the case file, evaluations of anticipated witnesses or their testimony; evaluations of the probabilities of obtaining certain evidence; investigative sources and techniques."

While the ABA Standards go further than our statutory authority allows, and more closely follow the Federal Procedures, which I agree do not control in this instance, they do provide some direction toward an ultimate solution. In the instant case, I believe petitioner should be entitled to "sworn statements" made by Georgia Whipple Jenkins, which may be in the prosecutor's possession, which specifically pertain to the period of December 2 through 8, 1969, covered in the charge confronting the petitioner. When a proper application is filed with the trial court, granting of the application will be within the trial court's discretion, unless otherwise authorized by statute. Likewise, it makes little difference whether the sworn statements were taken in Oklahoma, or in Arizona, so long as they concern the matters charged in the information. How that fact is to be determined is left to the trial court.

I concur.

BUSSEY, Presiding Judge (specially concurring).

I am in accord with the views expressed by Judge SIMMS in his analysis of what constitutes the "work product" of the District Attorney, and share his views that the Honorable Earl Truesdale lacked constitutional or statutory authority to grant pretrial inspection of the unsworn statements of Mrs. Georgia Whipple Jenkins. As I perceive and interpret Judge Simm's opinion, the question presented was not whether the Magistrate abused his discretion in granting the request of defense counsel, but rather turned on his constitutional and statutory authority to require the production of such testimony and statements. In this context, the authority of the trial court, if the defendant is held to stand trial after preliminary examination, in passing on a similar request for pre-trial inspection of such statements is not discretionary, but his authority to require pre-trial inspection of the work products of the District Attorney must be derived from either constitutional or statutory authority.

Our decision that the defense is not entitled to pre-trial examination of the statements of Georgia Whipple Jenkins for the reason that the same is not authorized by the constitution or the statutes of the State of Oklahoma, would, in my judgment, preclude the trial court from granting a similar request made subsequent to the issuance of this opinion.

In any event, the granting or denial of pre-trial inspection of pre-trial statements is not a matter of discretion, but a matter of authority vested in the court by the constitution and the statutes of Oklahoma and as such, prohibition will lie when the Judge acts in excess of such authority.