Robert Franklin RAY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17906.

Court of Criminal Appeals of Oklahoma.

May 25, 1973.

Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Charles F. Alden, III, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Robert Franklin Ray, hereinafter referred to as defendant, was convicted in the District Court of Oklahoma County, Case No. CRF 71–2691, of assault and battery with a deadly weapon with intent to kill, and sentenced to fifteen years imprisonment. Judgment and sentence was imposed on May 22, 1972, and this appeal perfected therefrom.

The evidence established that on the night of November 12, 1971, at approximately 11:00 p. m., David Matthews, Mike McConnell, Chris Guest and Pat Mappes, went to the Fat Cat Lounge in Oklahoma City to drink beer. The foursome, all medical students, were celebrating the end of exams and had just come from another bar. Defendant was employed at the Fat Cat Lounge as a doorman to check identifications and help out with trouble. Donna Houser, a go-go dancer and waitress at the lounge, complained to the defendant that Matthews and his friends were giving her trouble. McConnell spilled his beer on another customer and was then asked by the defendant to put his beer in a paper cup and leave. McConnell protested, as did Matthews. Defendant then told Matthews to put his beer in a cup and also leave. Matthews questioned defendant's authority and was again told to leave by defendant.

Matthews ignored defendant and began talking with his friends. Defendant again told them to leave and a fight between defendant and Matthews ensued. Some witnesses said defendant struck the first blow. Others said Matthews initially took off his glasses, began rubbing his fist, and remarked "I've been waiting for this all night."

Matthews and defendant wrestled on the floor with Matthews taking the advantage and getting on top. Matthews was then

pulled off the defendant. Matthews testified as he was leaving, he turned and saw the defendant level a gun at him and fire twice. Matthews, struck in the arm, ran from the lounge.

Defendant testified that as the fight ended, and he got to his knees, he found a pistol, a .25 caliber pistol, and brass knuckles lying nearby on the floor. Defendant picked them up and was going behind the bar when defendant was struck again by Matthews. According to defendant, he then fired a shot into the floor from the .25 caliber pistol.

One of Matthews' friends, Guest, testified that after the shooting he first ran out of the lounge, but returned for Mappes, when defendant pointed another gun, a .38 caliber revolver, at Guest and made him lie on the floor. As the police arrived, Guest saw defendant throw the .38 caliber revolver into a plastic dishpan behind the bar. Defendant denied pointing the gun at Guest.

The police arrived shortly after the shooting, and the three men found behind the bar were required to place their hands on the bar. One officer saw defendant make a stooping motion and lean toward the bar. The officer then came around behind the bar and saw the .38 caliber revolver lying in the pan. Defendant was arrested for carrying a firearm and taken to a police car, where he was searched. This search revealed the .25 caliber revolver and knuckles, located in defendant's back pockets. Defendant denied the guns or knuckles belonged to him.

 It is defendant's first contention that the trial court erred in allowing a state's witness to give his opinion, thereby invading the province of the jury. During redirect examination of the state's witness, Guest, the prosecutor asked, "Now you used the word accident. Did it appear to you to be an accident that the defendant shot David Matthews?" Defense counsel's objection was overruled and Guest answered it did not appear to be an accident.

We find no error in this regard and rely upon the pronouncement in Carroll v. State, 54 Okl.Cr. 196, 16 P.2d 891:

"It is sometimes said evidence of this kind is a statement of fact as it appeared to the witness and not an opinion. As a general rule, the witnesses should testify to facts and let the jury draw their conclusions from the facts as stated. This rule, however, should not be pushed to the extreme limit; it is modified by the further rule that opinions or conclusions of ordinary witnesses derived from common experience and observation of things which persons generally are capable of comprehending and understanding are admissible when the nature of the subject matter is such that it cannot be reproduced or detailed to the jury precisely as it appeared to the witness at the time. Whether this testimony be classed as a statement of fact or an opinion, it was admissible."

 Defendant further cites as error the failure of the trial court to require the production of a statement by the witness McConnell, made during the police investigation. During cross-examination of the state's witness Sanders, the investigating police officer, mention was made of a statement given by McConnell to the officer. There was no written and signed statement by McConnell. Rather, Officer Sanders' written police report of his investigation, included McConnell's version of the incident at the lounge.

Defendant relies upon the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." We find no such suppression in the instant case. There was no allegation or indication that the investigating officer's report of McConnell's version was material evidence pertaining to guilt or punishment. There was no pretrial motion for disclosure of all written statements taken by the

police. Defendant's request, seeking only McConnell's version from the police report, was made in the middle of the trial. In Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), the United States Supreme Court revisited Brady v. Maryland, thusly:

"The heart of the holding in Brady is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." 408 U.S. at 794, 92 S.Ct. at 2568, 33 L.Ed.2d at 713.

Applying this test, the court in Moore v. Illinois, supra, concluded that the failure of the state to produce an unrequested police diagram and state's witness misidentification of the defendant was not a due process violation. In so holding the Supreme Court observed: "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." 408 U.S. at 795, 92 S.Ct. at 2568, 33 L.Ed.2d at 713.

In Oklahoma, by statute, a defendant is entitled to a copy of any sworn statement of a witness given to the police. 22 O.S. 1971, § 749. However, a defendant is not entitled to inspection of unsworn statements of the work product of the police. State ex rel. Fallis v. Truesdell, Okl.Cr., 493 P.2d 1134 (1972). The statement in question was not technical and the source was available. See Layman v. State, Okl. Cr., 355 P.2d 444 (1960), and Doakes v. District Court, Okl.Cr., 447 P.2d 461 (1968). Indeed, the state offered to call the witness McConnell who was present and available to testify at the trial. Since the statement was unsigned and not sworn, since it was the police "work product," since it was not technical in nature, and since the source was available, we find no error in the trial court's refusal to require production of the investigating officer's report containing McConnell's version of the incident.

■ Defendant further urges the trial court erred in admitting the guns and knuckles, and testimony concerning same, contending they were obtained by an illegal arrest and search. The proposition is wholly without merit. The officers were summoned to the lounge pursuant to a call that someone there had a gun. Upon arriving, shortly after the shooting, the police directed the men behind the bar to place their hands on the bar. Defendant made a motion as if he were hiding something behind the bar. The officer stepped behind the bar and saw the .38 caliber revolver in plain view in a dishpan. The officer saw this attempted concealment by the defendant, arrested him for carrying a concealed weapon, and seized the .38 caliber revolver. Not only was his arrest lawful, but the .38 caliber revolver would have been admissible as it was not taken pursuant to a search, but with an open view, apparently abandoned, and evidence of the shooting of Matthews. See Coolidge v. New Hampshire, 403 U.S. 433, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Lloyd v. State, Okl. Cr., 505 P.2d 1364 (1973). A search of defendant's person, in the patrol car, which disclosed the .25 caliber revolver and the knuckles, was justified as incident to the arrest for attempted concealment of the .38 caliber revolver, or as an incident to defendant's arrest for the shooting of Matthews. A search of an arrestee's person incident to a lawful arrest is lawful and its fruits admissible. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

■■ Defendant additionally claims the denial of due process and the right of confrontation because of "false statements" in the testimony of the victim Matthews. Defendant refers to Matthews' testimony that he and his friends went to another bar before going to the Fat Cat Lounge, and that Matthews had only a total of two or three beers. Defendant argues this testimony of Matthews is rendered false be-

cause the witness Guest testified that the group, including Matthews, went to two bars before arriving at the Fat Cat Lounge, and that they had drunk several beers. We cannot accept defendant's conclusion that Matthews testified falsely. Although somewhat inconsistent, the two witnesses' testimony is not absolutely conflicting. Be that as it may, the jury heard both witnesses testify and was entitled to draw its own conclusions. Defendant had the opportunity to cross-examine both witnesses and could have called other witnesses relative to the group's activities before arriving at the Fat Cat Lounge. The credibility of a witness and the weight and value to be given to his testimony is within the exclusive province of the jury, and the jury may believe the testimony of a witness upon a question of fact or disbelieve the witness. Humphrey v. State, Okl.Cr., 452 P.2d 590 (1969). In this regard there is no basis to argue the defendant was denied due process or the right of confrontation.

■ Defendant further attacks as prejudicial the questioning by the prosecutor of certain defense witnesses. After a careful review of the record cited by the defendant, we conclude that this questioning was within proper cross-examination pertaining to matters brought out on direct examination. Although the examination may have been designed to highlight improbability, it was not unjustifiably calculated to arouse prejudice and prevent a fair trial. Neely v. State, Okl.Cr., 61 P.2d 741, 743. We find no indication that the prosecutor was taking unfair advantage of the witnesses by asking questions containing matters which he knew to be either not true or incapable of proof. Valenti v. State, Okl. Cr., 392 P.2d 59 (1964).

■ Defendant contends the trial court erred in failing to give a limiting instruction concerning the testimony indicating that the defendant may have assaulted Mappes and Guest by threatening them with a gun. Also, defendant argues, the court did not instruct that specific intent was an essential element of the crime charged. It does not appear from the record that defense counsel requested or offered any such instructions. It is fundamental in this jurisdiction that when counsel is not satisfied with the instructions, or desires any particular instructions, it is the duty of counsel to prepare and present to the court such desired instructions and request that it be given. In the absence of such a request, this Court will not reverse the conviction if the instructions given cover the relevant subjects, and accurately instruct on the law in the case. Schapanasky v. State, Okl.Cr., 478 P.2d 912 (1970). The testimony indicating defendant may have threatened Guest or Mappes with a gun was a part of the res gestae and indicative of defendant's intent and mind at the time of the offense charged. Accordingly, such testimony was admissible and the defendant's failure to request any limiting instructions as to the purpose of such testimony constitutes waiver of any error now raised for the first time on appeal.

■ Lastly, we find merit to defendant's contention that the prosecutor's argument, allowed over objection, was prejudicial and beyond the contemplated liberal range of discussion permitted by counsel in closing argument. The prosecuting attorney, Assistant District Attorney Miller, repeatedly derided the character of the defense witnesses and referred to them as topless dancers, although no evidence established this fact. The prosecuting attorney stated, "These people lied." He continued, " . . . you could see what kind of people they are, by the way they dress. To my knowledge they didn't say one word that should be believed; not one." Prosecutor Miller further stated: "I can tell you, knowing they were lying, I would never let them get on that witness stand to testify." In addition, the prosecutor advised the jury: " . . . if this man [defendant] is found not guilty by you now and later witnesses who have lied are charged with the crime of perjury and convicted, we can never come back and try this man again for this crime."

This argument was highly improper and should have been stopped by the trial judge and the jury advised to disregard it. Although counsel, in closing argument may comment upon the evidence in the case and logical inferences therefrom, he may not inject his personal opinion or beliefs, nor may he speculate as to future criminal proceedings, nor state that witnesses have committed perjury absent a judgment of perjury. See 50 A.L.R.2d 766. The American Bar Association's Standard for Criminal Justice succinctly state the issue in Section 5.8 of the standards relative to the prosecution function and defense function.

" (a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

" (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

" (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

" (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

It would appear that the improper and highly prejudicial argument of the prosecutor had its effect on the jury, since the prosecutor only asked that the jury impose a punishment of ten years imprisonment, and the jury returned a verdict assessing punishment at fifteen years imprisonment. Since the evidence of defendant's guilt is clear, we conclude that justice will be served in the instant case in modifying the sentence which appears to have been affected by the prosecutor's improper argument. Radcliff v. State, Okl.Cr., 490 P.2d 1398 (1971).

Accordingly, the sentence is hereby modified to a term of five years imprisonment, and as so modified, the judgment and sentence is hereby affirmed.

BLISS, P. J., and BUSSEY, J., concur.