Dear Honorable Stephenson,
The Attorney General is in receipt of your request wherein you ask, in effect, the following question:
Is the holding in Attorney General's Opinion No. 79-11 (March 29, 1979)applicable to "arrest records" and "rap sheets" maintained by countysheriffs, city police departments, town marshals, the Department ofCorrections, and the Department of Public Safety?
Opinion No. 79-11 held that "criminal histories" compiled by the Oklahoma State Bureau of Investigation under the statutory authority of 74 O.S. 150.2, 74 O.S. 150.9, and 74 O.S. 160.12 (1976) are not public records, and therefore, not open to public inspection within the purview of 51 O.S. 24 (1971). Since Opinion No. 79-11 interpreted statutes and records maintained by one agency, its effect cannot be uniformly applied to all the law enforcement agencies you have listed. The statutory duties and responsibilities and agency policies vary from one enforcement agency to another and are widely different.
Whether "arrest records" and "rap sheets" are public records is a question of fact which can only be determined from specified information about the particular type of record and how it is used within the agency in question. The terms "arrest records" and "rap sheets" are very broad and encompass a wide range of documents and records used for numerous purposes depending on the duties and responsibilities, by statute, ordinance, or policy, of each law enforcement office, department, agency, or bureau. Generally, however, this office would reaffirm its position on what law enforcement records are subject to public inspection by citing the case of Houston Chronicle Publishing Co. v. City of Houston, 531 S.W.2d 177 (Tex.Civ.App. 1975), aff'd, 536 S.W.2d 561 (Tex. 1976), 82 A.L.R.3d 1, wherein this Court held:
 ". . . records referred to as the Houston Police Blotter, Showup Sheet, and Arrest Sheet are public records available to the press and public under the Open Records Act. We hold that the records referred to as the Offense Report and Personal History and Arrest Record are excluded by section 3(a)(8) as being records of law enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law enforcement agencies which are maintained for internal use in matters relating to law enforcement . . . ."
This position is further supported by Oklahoma case law, Fallis v. Truesdell, Okla. Cr., 493 P.2d 1134 (1972) and Doakes v. District Court of Oklahoma County, Okla. Cr., 447 P.2d 461 (1968), wherein this Court held that investigative records are not subject to inspection by the accused himself in a criminal case unless by court order. Additionally, the Attorney General is unable to find statutory authority or case law in any jurisdiction, either federal or state, where it has been held that "arrest records" or "rap sheets," used by agencies for internal investigations of criminal activity, are public records in accordance with an Open Records Act.
Therefore, depending on their use, records maintained for primarily administrative functions and not used for detection and investigation of criminal activity should be classified as public records within the purview of 51 O.S. 24 (1971). For these reasons, Opinion No. 79-11 cannot be applied uniformly and is limited in its application to the statutes and records discussed in that opinion as they relate to the Oklahoma State Bureau of Investigation.
It is, therefore, the opinion of the Attorney General that yourquestion be answered as follows: Records used for internal detection andinvestigation of crimes are not public in nature; however, administrativerecords are within the purview of 51 O.S. 24 (1971) and open to publicinspection. Whether a record is public in nature is a question of factthat can only be determined from the type and purpose of the recordmaintained, its use, and the statutes, ordinances, and policiespertaining to the individual law enforcement entity maintaining the recordin question.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
WILLIAM S. FLANAGAN, ASSISTANT ATTORNEY GENERAL