**David Wayne GRUBB, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–362.**

Court of Criminal Appeals of Oklahoma.

May 18, 1983.

William J. Musseman, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Gene Scott Ray, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, David Wayne Grubb, Jr., was convicted in Tulsa County District Court, Case No. CRF–80–2642, of Robbery by Force, was sentenced to seven and one-half (7½) years' imprisonment, and he appeals.

On April 13, 1980, 69-year-old, Miss Blanche Marsh's purse was forcibly taken from her as she attempted to enter a Skaggs Grocery store located at 51st and Harvard in Tulsa, Oklahoma. The commotion and Miss Marsh's screams alerted two (2) witnesses who pursued the assailant. The robber collided with a witness, Mr. Bill L. Stewart, dropped Miss Marsh's purse and then fled the scene. Mr. Stewart was the only witness at trial who could identify the defendant as the assailant.

Defendant alleges, in his first assignment of error, that a pre-trial photographic line-

up, conducted two to three days after the incident, was so suggestive that it tainted Mr. Stewart's subsequent in-court identification, and that Stewart should not have been permitted to identify the defendant in court.

In an in-camera hearing, Detective E.M. Kirkland of the Tulsa Police Department testified that he showed Mr. Stewart a photographic array consisting of eight (8) photographs, one of which was of the defendant. The photograph of the defendant used in the photographic lineup had been taken when he was fourteen (14) years old; at the time of the crime, the defendant was seventeen (17) years old. The other photographs in the lineup were of individuals eighteen (18) to twenty-five (25) years of age. We note that Detective Kirkland did not preserve and was unable to produce the pictures of the other seven (7) individuals used in the photographic lineup, in accordance with procedures recommended in *Thompson v. State,* 438 P.2d 287 (Okl.Cr. 1968). Conceding that the photographic lineup viewed by Mr. Stewart may have been suggestive, we then turn to the central question of whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. *Neal v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth factors to be considered when determining whether an in-court identification was tainted by a pre-trial confrontation. These factors include: 1) the prior opportunity of the witness to observe the defendant during the alleged criminal act; 2) the degree of attention of the witness; 3) the accuracy of the witness' prior identification; 4) the witness' level of certainty; and, 5) the time between the crime and the confrontation. *Manson,* supra.

In applying the factors set forth above to the facts in the instant case, the following emerges: 1) Mr. Stewart's opportunity to view the assailant consisted of approximately eight seconds in which the robber was running directly toward the witness and eventually collided with him; it was daylight, and Stewart testified he got a good look at the robber's face; 2) it was highly probable that the witness devoted full attention to the incident because he testified he saw the assailant running toward the elderly woman and knew something wasn't right; observed the robber snatch the purse and run towards him, and then scuffled with the robber; 3) the witness subsequently described the assailant as being of medium build, with blond hair and wearing blue jeans; 4) there is no dispute that Mr. Stewart felt positive about his identification; and 5) finally, the photographic lineup was held only a few days after the incident. Under the totality of circumstances set forth above, and it appearing to this Court that the identification was based upon the witness' observation at the scene of the crime, we find that the court's admission of the in-court identification was proper. This assignment of error is therefore without merit.

In his second assignment of error, the defendant argues that conduct of the prosecuting attorney denied him a fair and impartial trial. The record before us is replete with comments of the prosecutor to which proper objections were interposed. Among the comments specifically complained of by the defendant is the following:

MR. THOMPSON:

Q. He wasn't with you, was he?

MR. GRUBB:

A. No, sir, he was not.

Q. The three of you were out together, is that right?

A. Yes, sir, we was going around and around on a motorcycle track.

Q. I know you were going around and around. You were going around and around with Miss Marsh, weren't you?

A. No, sir, I resent that question.

MR. SHOOK: Objection.

THE COURT: I would overrule that and give you an exception.

Q. Mr. Grubb, you know in your own heart and your own mind that you robbed and hurt that lady and you know it.
A. No, sir, I did not.
Q. And you know this is your hat.
A. No, sir. I can say that we have a bunch of them hats, but I never wear them. (Tr. 136).

\* \* \* \* \* \*

During closing argument the record reflects the following:

... [T]hat robbery was completed when her money and purse was forcibly removed from her person, the crime was complete at that moment, even though she later recovered it moments later. It was not an attempt. It would have been an attempt had she been able to hold on, retain it and the other person, I believe it to be Mr. Grubb in this case, had not been successful in getting it from her—
MR. SHOOK: Object, Your Honor, to the prosecutor giving his opinion of the guilt of the defendant.
THE COURT: I would overrule that and give you an exception.
MR. SHOOK: Ask that the jury be admonished and move for a mistrial.
THE COURT: Overruled.
MR. SHOOK: Exception. (Tr. 165 & 166).

Although a prosecutor may comment upon the evidence in a case and logical inferences therefrom, he may not inject his personal opinions or beliefs as was done in the instant case. See, *Ray v. State,* 510 P.2d 1395 (Okl.Cr.1973); compare, *Young v. State,* 373 P.2d 273 (Okl.Cr.1962).

The defendant also complains of the following objected to comment:

A lot of people try to attack the fact of an eyewitness identification, you know, and a lot of attorneys, especially those who defend criminals, say that eye-witness testimony is deplorable.
MR. SHOOK: Objection, Your Honor, to Mr. Thompson's implication that I am representing a criminal.
THE COURT: I would overrule that and give you an exception. (Tr. 147).

In *Babek v. State,* 587 P.2d 1375 (Okl.Cr. 1978), we addressed similar comments regarding the defense of "criminals" and found them to be error.

Additionally, the defendant contends that the following excerpt from the record constitutes a "sign-post" argument that has been condemned by this Court, to wit:

... [I]t's sometimes easy for us in the courtroom sometime afterwards to forget, you know, just how brutal it can be out there, what disregard that some of us have for the lives and rights of others. It's very easy to forget that, but there are people out there who live by their own, you know, jungle law, and it's unfortunate.
MR. SHOOK: I would like to object to this line of argument.
THE COURT: I would overrule that.
MR. THOMPSON: Under the law and under the evidence in this case Mr. Grubb has created his own rules of how he is running his life, his behavior. I ask you to return a guilty verdict and please don't just slap him on the wrist and think it will all go away.

You know, punishment has been described as being for rehabilitation purposes, or punishment in and of itself, or a deterent. I believe that, under the law and under the evidence that there's only one thing that you can be certain about as to any of those three aspects with regard to punishment, that is that the proper punishment in this case will deter at least one person from attacking persons like Miss Marsh in the future and that will deter the defendant from doing it. (Tr. 170).

In *Beeks v. State,* 563 P.2d 653 (Okl.Cr. 1977), this Court found that a similar closing comment was "improper argument and was injected in an attempt to prejudice the jury." See also, *Cooper v. State,* 584 P.2d 234 (Okl.Cr.1978).

Further, the record discloses that the assistant district attorney was allowed to elicit evidence that the defendant had evaded paying his income taxes, had been arrested for fighting with his father, and had a

juvenile record. Such argument does not fit into any of the allowed exceptions for the admission of other crimes evidence utilized in our jurisdiction, and was improperly admitted. See, *Roulston v. State,* 307 P.2d 861 (Okl.Cr.1957).

Furthermore, the prosecutor continually badgered the witness, and at one point he put a cap, which had been knocked from the robber's head, onto the defendant's head. This occurred while the defense counsel was at the bench objecting to the badgering.

Having reviewed the trial record, and finding it to be impregnated with objectionable comments and actions by the prosecutor, we are of the opinion that the defendant was denied a fair and impartial trial.

In view of the above finding, the defendant's remaining assignment of error need not be addressed.

The judgment and sentence is REVERSED and REMANDED for a new trial.

CORNISH and BRETT, JJ., concur.